735 P.2d 974

**William Otis HANSEN and Lenora Hansen, husband and wife, Plaintiffs-respondents,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-appellant,**

and

**Daniel Rodriguez and John Does I through V, Defendants.**

No. 16032.

Supreme Court of Idaho.

March 3, 1987.

Rehearing Denied April 27, 1987.

Bobbi K. Dominick, of Elam, Burke & Boyd, Boise, for defendant-appellant.

David L. Whitney and Ronald P. Rainey, of Alexanderson, Davis, Rainey, Whitney & Kerrick, Caldwell, for plaintiffs-respondents.

BAKES, Justice.

Appellant State Farm Mutual Automobile Insurance Company (State Farm) appeals from a jury verdict in favor of respondents William and Lenora Hansen in a civil action brought by the Hansens against State Farm seeking to recover under the uninsured motorist provision of certain State Farm insurance policies. State Farm also appeals the district court's order awarding attorney fees to the Hansens in the action below. On appeal, State Farm contends that the district court erred in (1) permitting Hansens to "stack" their uninsured motorist coverage under their three State Farm policies; (2) holding the arbitration clause in the uninsured motorist provision unenforceable and void; and (3) awarding attorney fees pursuant to I.C. § 41–1839. We reverse in part, affirm in part and remand.

On April 16, 1983, William and Lenora Hansen were injured when their car, a 1972 MGB insured with State Farm, was struck by an uninsured vehicle driven by Daniel Rodriguez, who was drunk. The Hansens notified their insurance carrier, State Farm, the day following the accident. A State Farm claims adjuster met with the Hansens within a few days following the accident and made arrangements for payment of damages to their car as well as for any medical expenses incurred for their injuries. These payments were made under the collision and medical payment coverages, and not under the uninsured motorist coverage of the policy covering the 1972 MGB. Hansens also held two other policies with State Farm, covering two other vehicles which they owned. Each of these additional policies also contained uninsured motorist coverage.

On June 28, 1983, the claims adjuster met with respondents' attorney on an unrelated matter, the "Ames" file. At the conclusion of that meeting, the attorney informed State Farm's agent that he was also representing the Hansens on their uninsured motorist claim resulting from the Rodriguez accident. He asserted that Mr. Hansen had lost his job as a result of the injuries suffered in that accident. The record indicates that this was the first time a claim under the uninsured motorist coverage and a claim for lost earnings was asserted by the Hansens against State Farm.[1] State Farm's agent requested the attorney to provide him with the medical reports and employer reports which would support or verify Mr. Hansen's claim of lost earnings. The claims adjuster further testified that the attorney agreed to supply such information. This testimony is uncontroverted in the record. These reports were never provided despite numerous attempts by the claims agent to contact the attorney for the Hansens. For the next few months, State Farm received and paid, under the medical payment coverage, the medical bills submitted by the Hansens for medical ex-

---

1. When the State Farm claims adjuster first met with Hansens a few days following their accident, both William and Lenora asserted that their injuries were getting better and that neither had lost any time from work due to their injuries. At that meeting, Hansens also indicated that the driver of the vehicle which struck them had been cited for failure to carry insurance by the police officer investigating the accident.

penses incurred as a result of their injuries from the accident.

On December 9, 1983, without making any previous demand, the Hansens filed suit against State Farm under the uninsured motorist coverage.

During the course of discovery, Mr. Hansen was examined, at State Farm's request, by two doctors. As a result of those examinations, State Farm learned for the first time that Mr. Hansen had a pre-existing arthritic hip condition which had been aggravated as a result of the April 16, 1983, accident. State Farm received the results of these examinations nearly a year following the accident.[2] The record also indicates that subsequent to commencement of litigation State Farm obtained reports from Mr. Hansen's employer. The only information in the record on appeal regarding these reports is found in a letter from appellant's counsel to counsel for Hansens. In that letter, appellant's counsel asserts that he was informed by Mr. Hansen's employer that the reason for Mr. Hansen's dismissal was *not* because of any disabling injury, but was because of his poor performance both *before* and after his automobile accident. Counsel's assertion in that letter is not controverted by any other evidence in the record, nor is it apparent from the jury verdict that its award to Mr. Hansen was for lost future earnings.[3]

Following discovery, and particularly the reports from the medical examinations of Mr. Hansen, State Farm entered into settlement negotiations with the Hansens. State Farm offered to settle the matter for $13,500 in June of 1984. Respondents rejected this offer in August, 1984. Their rejection apparently was based on their belief that Mr. Hansen's injuries were more serious than earlier believed and also that they would be entitled to "stack" their insurance coverage under the three different State Farm policies held by the Hansens on three different vehicles. Hansens counteroffered $30,000, the limits of coverage available if the three policies were "stacked." [4] At this point settlement negotiations broke off, and litigation proceeded.

On September 4, 1984, counsel for Hansens filed an amended complaint seeking for the first time to stack the uninsured motorist coverages of the three policies, as well as punitive damages for State Farm's alleged bad faith in refusing to settle Hansens' claims. On October 5, 1984, Hansens moved for summary judgment on the stacking issue. On October 9, 1984, ten months after the action was filed, State Farm for the first time moved to compel arbitration under the arbitration clause of the uninsured motorist provision in the policy covering the 1972 MGB, the car involved in the April, 1983, accident.[5]

The trial court, after a hearing and briefing on the matter, denied State Farm's

---

2. When Mr. Hansen was contacted by the claims adjuster approximately four days after the accident, he did *not* indicate that he had suffered any injury to his hip. He also stated that he had not lost any time from work as a result of the accident.

3. At oral argument before this Court, counsel for respondents indicated that the jury award represented an award to cover the costs of future surgery on Mr. Hansen's hip. At no time has respondents' counsel asserted that argument and evidence were presented to the jury upon which it could award damages based on lost future earnings.

4. Each policy contained a $10,000 per person/$20,000 per accident limit of liability under the uninsured motorist coverage.

5. The insurance policy covering the MGB, as well as the other two insurance policies, contained an arbitration clause in the uninsured

motorist provision. The pertinent language from the policy is as follows:

"**Deciding Fault and Amount**
"Two questions must be decided by agreement between the *insured* and us:
 1. Is the *insured* legally entitled to collect damages from the owner or driver of the *uninsured* motor vehicle; and
 2. If so, in what amount?
"If there is no agreement, these questions shall be decided by arbitration upon written request of the *insured* or us. Each party shall select a competent and impartial arbitrator. These two shall select a third one. If unable to agree on the third one within 30 days either party may request a judge or a court of record in the county in which the arbitration is pending to select a third one. The written decision of any two arbitrators shall be binding on each party." (Emphasis in original.)

motion to arbitrate on grounds that the arbitration provision was unenforceable due to lack of mutual assent. Hansens' motion for summary judgment on the stacking issue was held in abeyance, and the case proceeded to jury trial on February 4, 1985. The only issue litigated was damages.[6] The jury returned a $69,000 verdict, $64,000 for William, and $5,000 for Lenora. The verdict for William was reduced to a $30,000 judgment against State Farm by the trial court on State Farm's motion to conform the judgment with the limits of coverage available by stacking the three policies. However, State Farm in its memorandum to the trial court accompanying its motion to amend judgment specifically reserved for appeal the issue of stacking the uninsured motorist coverage under the three separate policies held by Hansens.

Following the verdict and amended judgment, the Hansens also sought an award of attorney fees under I.C. § 41–1839. State Farm objected to any award of attorney fees. The trial court found that attorney fees were recoverable under I.C. § 41–1839, and that the amount requested by Hansens, $10,837.50, was a reasonable amount when considering the factors listed in I.R.C.P. 54(e)(3). State Farm appeals from both the verdict and award of attorney fees.

I

We first address the stacking issue. The trial court permitted stacking of the uninsured motorist coverage in the three policies held by Hansens with State Farm. Each of the three policies contains an express, unambiguous provision which prohibits stacking of coverage under the policies where the alleged loss suffered by the insured occurred while operating a vehicle which he owned but which was not listed as an insured vehicle under the terms of the particular policy upon which coverage is asserted. The "anti-stacking" clause of each of the policies reads as follows:

"There is no coverage:

. . . .

"2. For bodily injury to an insured:

a. while occupying, or

b. through being struck by

a motor vehicle owned by you, your spouse or any relative if it is not insured for this coverage *under this policy.*" (Emphasis added.)

The trial court found that such anti-stacking provisions were void as against public policy. The trial court based its decision in large part on the Court of Appeals decisions in *Hammon v. Farmers Insurance Group*, 107 Idaho 770, 692 P.2d 1202 (Ct. App.1984), and *Dullenty v. Rocky Mountain Fire & Cas. Co.*, 107 Idaho 777, 692 P.2d 1209 (Ct.App.1984). In those cases, the Court of Appeals held that the anti-stacking provisions such as those found in the Hansen policies were void as against public policy.

However, subsequent to the court's decision in the present case, we overruled the Court of Appeals' *Dullenty* decision and that portion of its *Hammon* decision dealing with anti-stacking clauses. In *Dullenty v. Rocky Mountain Fire & Cas. Co.*, 111 Idaho 98, 721 P.2d 198 (1986), we found no public or legislative policy which prohibits the use or inclusion of anti-stacking clauses in uninsured motorist provisions of automobile insurance contracts.

"[W]e find nothing in our statutory scheme of automobile insurance which specifically requires an insurance carrier to extend coverage to an insured occupying an owned vehicle which is not insured by the carrier under a motor vehicle liability policy. We find no public policy implicit in our statutory scheme of automobile insurance which should require such coverage and thus invalidate the exclusionary clause in the instant case." *Id.*, 721 P.2d at 206.

The rationale of our decision in *Dullenty* is equally applicable to the present case. Each of the three policies held by the Hansens with State Farm unambiguously state that the uninsured motorist coverage applies only to vehicles insured under that particular policy. The policies expressly

6. Hansens dismissed with prejudice their bad

faith/punitive damage claim prior to trial.

exclude coverage for any vehicle not insured "under this policy." Thus, the general rule that any ambiguity in an adhesion contract is to be construed against the drafter of the contract is inapplicable in the present case. There is no ambiguity in the "anti-stacking" clause of the uninsured motorist coverage in each policy. The language used in the policies is clear and concise. There is no need to construe any ambiguity.[7] As we recently stated in *Kromrei v. AID Ins. Co.*, 110 Idaho 549, 716 P.2d 1321 (1986), "Where the policy language is clear and unambiguous, there is no occasion for construction, and coverage must be determined according to the plain meaning of the words employed." *Id.* at 551, 716 P.2d at 1323. *See also Casey v. Highlands Ins. Co.*, 100 Idaho 505, 600 P.2d 1387 (1979). In *Kromrei*, we also held:

> " 'It is the function of the Court to construe a contract of insurance as it is written, and the Court by construction cannot create a liability not assumed by the insurer, nor make a new contract for the parties, or one different from that plainly intended, nor add words to the contract of insurance to either create or avoid liability.' *Unigard Ins. Group v. Royal Globe, etc.*, 100 Idaho 123, 128, 594 P.2d 633 (1979)." 110 Idaho at 551-552, 716 P.2d at 1323-24.

 Secondly, as was the case in *Dulenty*, there is no indication in the record on the appeal, nor have the parties asserted, that the policies in question have not been approved by the Director of the Department of Insurance, as required by I.C. § 41-1812. Absent any assertion to the contrary, we assume that the policies were submitted to and approved by the Director. *Dullenty v. Rocky Mountain Fire & Cas. Co.*, 111 Idaho at 101, 721 P.2d at 203, 206 ("Policies issued by carriers must be approved by the Department of Insurance. The policy at issue here has not been shown to have been disapproved by the Department of Insurance."). The Director of the Department of Insurance has been

charged by our legislature with regulating the insurance industry in this state. Among the duties entrusted to his charge are those of reviewing and approving insurance policy forms. The legislature has delegated to the Director the responsibility of assuring that insurance contracts utilized in this state comport with public policy. In I.C. § 41-113, the legislature has specifically stated that "[t]he business of insurance is one affected by the public interest, requiring that *all persons* be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters...." Thus, the legislature has concomitantly provided the Director of the Department of Insurance with authority to disapprove any insurance policy form which "[c]ontains or incorporates by reference, where such incorporation is otherwise permissible, any inconsistent, ambiguous, or misleading clauses, or exceptions and conditions which deceptively affect the risk purported to be assumed in the general coverage of the contract, or which are unfairly prejudicial to the policy holder." I.C. § 41-1813. We deem the Director's duties regarding the public interest to also include concern for the cost to the public of insurance coverage. It may well be that policies containing anti-stacking provisions, or arbitration clauses, result in lower premiums. Similarly, it may well be that as insurance premium costs rise so will the number of people who either refuse or cannot afford to carry even the limited statutorily mandated liability insurance coverage on their automobiles. The Director has at his disposal a broad range of factual information concerning both coverage and premium costs upon which to base a determination of whether a given insurance policy is in the overall public interest. The Director's access to industry factual information is far more comprehensive than the limited record before this Court in the case at hand. The statutory scheme is clear. The Director of the Department of Insurance is the person entrusted by the legislature to determine whether or not given policies comport with the public interest. Policies

---

**7.** We note that I.C. § 41-1822 provides that "[e]very insurance contract shall be construed

according to the entirety of its terms and conditions as set forth in the policy...."

approved by the Director are thus presumed to be in harmony with public policy. In the absence of proof that a policy contains provisions which conflict with express legislative directives, the Director's approval of an insurance policy form is an administrative determination that the policy form is in the "public interest." I.C. § 41–113.

It is asserted that the present case is partially distinguishable from the situation in *Dullenty*, because here all three policies which are sought to be stacked were issued by the same insurance carrier, whereas in *Dullenty* they were issued by separate carriers. We find the distinction insignificant. The separate premium charged in each of the three policies for uninsured motorist coverage has, as its basis, coverage for the particular vehicle designated in each of the separate policies. Nothing in the record suggests that the separate premium charged in each of the policies has as its basis coverage for any other vehicle owned by the insured and insured under one of the other policies. In short, there is no evidence in the record on appeal that any windfall would accrue to State Farm if the anti-stacking provision of the uninsured motorist coverage were enforced against the Hansens.

■ Thus, we hold, as we did in *Dullenty*, that the anti-stacking provisions in the policies in question in the present case are not contrary to public policy and are therefore enforceable. The district court, which ruled without the benefit of our decision in *Dullenty*, erred in holding to the contrary. We therefore reverse the district court's decision regarding the anti-stacking issue.

II

State Farm asserts that it was error for the district court to deny State Farm's motion to compel arbitration under the arbitration provision of the uninsured motorist coverage of the policy. We disagree and affirm the district court, albeit on different grounds. *Andre v. Morrow*, 106 Idaho 455, 680 P.2d 1355 (1984).

■ As we held above with regard to "anti-stacking" clauses in uninsured motor-

ist provisions, we also conclude that there is no public policy violated by including an arbitration clause in an uninsured motorist coverage. Indeed, we perceive an express legislative policy in favor of such clauses. In 1975 the Idaho legislature adopted the Uniform Arbitration Act. 1975 Idaho Sess. Laws, ch. 117, § 2, p. 240; I.C. §§ 7–901 *et seq.* As we held in *Loomis, Inc. v. Cudahy*, 104 Idaho 106, 656 P.2d 1359 (1982), the legislature's action in adopting the act evinces an intent to encourage arbitration agreements "as [an] effective means to resolve disputed issues." *Id.* at 108, 656 P.2d at 1361. The act, as adopted in Idaho, specifically provides that "[a] written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." I.C. § 7–901.

There is no question in the present case that a written contract exists which contains an arbitration provision. The uninsured motorist coverage of the insurance policy expressly provides, in unambiguous language, for arbitration between the parties in the event they cannot agree as to either the insured's legal right to collect damages from the owner or driver of the uninsured motor vehicle or the amount of such damages. As I.C. § 7–901 provides, the arbitration provision must be enforced unless there exist "such grounds as exist at law or in equity for the revocation of any contract." In *Loomis, Inc. v. Cudahy*, *supra*, we interpreted this "revocation" exception as applying "only to cases in which the courts will step in and rescind the agreement for reasons such as fraud, duress, or undue influence." *Loomis, Inc. v. Cudahy*, 104 Idaho at 109, 656 P.2d at 1362. Hansens have not argued on appeal, nor did they at trial below, the existence of any fraud, duress or undue influence on the part of State Farm in procuring the arbitration provision in the insurance contract. Rather, the Hansens frame the issue as whether they voluntarily entered into the arbitration agreement. The dis-

trict court accepted this framing of the issue and decided in favor of the Hansens. We hold that the Hansens, and subsequently the district court, misapprehended the issue at hand and therefore erred in their analysis.

██ The district court held that the arbitration agreement lacked mutuality of assent and therefore was unenforceable. We find that the district court's application of the "mutuality of assent" doctrine to only one of numerous provisions of the insurance contract between State Farm and the Hansens to be a misapplication of the doctrine. Mutuality of assent refers to the heart of the bargain. That is, the question of mutuality of assent goes to the formation of a contract as a whole. It does not refer to a single term of a contract unless that term goes to the heart of the bargain as represented by the contract as a whole. The Restatement (Second) Contracts, in its section dealing with the formation of a contract, expressly recognizes this distinction. "Thus, where an offer is contained in a writing either the offeror or the offeree may, *without reading the writing,* manifest assent to it and *bind himself without knowing its terms.*" Restatement (Second) Contracts § 23, comment b (1981) (emphasis added).

If we were dealing with a contract which had as its primary purpose the arbitration of a disputed issue, the existence or nonexistence of mutual assent might be a pertinent point of inquiry. However, we are dealing with a contract which has as its primary purpose the acquisition of automobile insurance. It is not asserted by the Hansens that the insurance contract as a whole lacks mutuality of assent. It is certainly not in the interests of the Hansens to assert lack of mutuality of assent, because that would render the entire contract unenforceable. It is clear that the Hansens manifested their assent to the contract of insurance when filling out the application form for the insurance and signing it. Their assent was further manifested after receiving the policy in the mail by payment of premiums on the policy. Restatement (Second) Contracts § 19.

Hansens argue that while they may have assented to a contract for insurance, they did not assent to a relinquishment of their right to litigate disputed issues under that contract in a court of law. They argue that since State Farm or its agents failed to disclose the existence of the arbitration provision in the uninsured motorist coverage they were unaware of its existence and therefore cannot be bound by the same. However, as we have stated above, the question of assent goes to the heart of the bargain of the contract as a whole and not to each separate provision in that contract unless such term goes to the heart of the bargain. Furthermore, were we to accept Hansens' reasoning, we would of necessity be compelled to conclude that no uninsured motorist coverage was available at all to the Hansens. In sworn statements to the trial court, Mrs. Hansen indicated that at no time was uninsured motorist coverage discussed by State Farm's agent at the time that she applied for automobile insurance. "Neither Mr. Baker nor anyone else ... associated with State Farm Mutual Insurance Company ever discussed uninsured motorist coverage with affiant.... There simply was never any discussion or mention of the matter and affiant did not really understand what uninsured motorist coverage was until this lawsuit." Thus, by the Hansens' own reasoning, mutuality of assent would be lacking as to the entire uninsured motorist coverage, not just the arbitration provision of that coverage.

Hansens also argue that the arbitration provision should be found unenforceable because the contract in question is an adhesion contract and therefore there is no bargaining with insurance companies over the terms. We find this argument to be without merit. It appears to be nothing more than an argument that arbitration clauses in such contracts should be held void as against public policy. However, the legislature has expressly declared that public policy favors arbitration provisions in written contracts. I.C. § 7–901; *Loomis, Inc.*

*v. Cudahy, supra.*[8] If the legislature had intended to exempt certain types of contracts from the provisions of the Uniform Arbitration Act, it could have done so. In fact, I.C. § 7–901 contains a specific exemption regarding arbitration agreements between employers and employees, *i.e.,* the collective bargaining process. This Court has held: "Where statutes are not ambiguous, it is the duty of the court to follow the law as written, and if it is socially or otherwise unsound, the power to correct is legislative, not judicial." *Anstine v. Hawkins,* 92 Idaho 561, 563, 447 P.2d 677, 679 (1968). Additionally, the arbitration clause has again presumably been approved by the Director of the Department of Insurance, to whom the legislature has delegated the authority and responsibility for approving insurance contract terms. *Dullenty v. Rocky Mountain Fire & Cas. Co., supra.*

We hold that the district court erred in ruling the arbitration provision of the uninsured motorist coverage unenforceable. There has been no showing by the Hansens based on the evidence in the record, nor did the district court find, that the inclusion of the arbitration provision was the result of fraud, duress or undue influence on the part of State Farm. *Loomis, Inc. v. Cudahy, supra.* Accordingly, the trial court erred in holding that such clauses were void as against public policy.

Although concluding that arbitration provisions are valid and enforceable, we nonetheless affirm the district court's denial of State Farm's motion to compel arbitration. *Andre v. Morrow,* 106 Idaho 455, 459, 680 P.2d 1355, 1359 (1984) ("Where an order of a lower court is correct, but based upon an erroneous theory, the order will be affirmed upon the correct theory."). We hold that State Farm's motion to compel arbitration was untimely

filed and that by submitting to the jurisdiction of the district court and proceeding with litigation in that court, State Farm waived its right to compel arbitration. As we stated in *Loomis, Inc. v. Cudahy,* 104 Idaho at 108, 656 P.2d at 1361, "Arbitration generally offers an inexpensive and rapid alternative to prolonged litigation. It also serves to alleviate crowded court dockets." (Footnote omitted). The policy underlying the enforcement of arbitration agreements or provisions in a written contract is rendered meaningless when the parties to such agreements proceed with the litigation process. That is precisely what has happened in the present case.

When suit was commenced by the Hansens on December 9, 1983, with the filing of their complaint in district court and service of that complaint upon State Farm, State Farm at that point knew that a dispute existed regarding coverage under the uninsured motorist provision of their insurance policy with State Farm. There was no reason for State Farm to proceed with the litigation process, *i.e.,* answering the complaint, engaging in discovery, taking the Hansens' depositions and requiring Mr. Hansen to submit to medical examination. State Farm did not move to compel arbitration until nearly eleven months following commencement of the action by Hansens. State Farm did not seek arbitration until settlement negotiations broke off and it became apparent that Hansens would seek stacking of the uninsured motorist coverage of their State Farm policies. In short, when it appeared that things were not going its way, State Farm wanted out of the litigation process.

Under the facts of this case, we hold, as a matter of law, that State Farm waived its right to enforce the arbitration provision of the uninsured motorist coverage in the insurance contract. Therefore, we affirm

---

8. The holding in *Loomis,* given the facts of that case, is directly contrary to Hansens' assertion that adhesion contracts should be exempted from the provisions of the Uniform Arbitration Act. The contract under consideration in *Loomis* was an adhesion contract also, a standardized AIA form contract. *Loomis, Inc. v. Cudahy,* 104 Idaho 106, 117–118, 656 P.2d 1359, 1370–71 (1982) (Bistline, J., dissenting). The form contract in *Loomis* was presented to Mrs. Cudahy for the first time on the very day when she signed the agreement. Its contents allegedly were never discussed or disclosed to Mrs. Cudahy. Nevertheless, under the facts of that case, we held the arbitration clause found in the form contract to be enforceable.

the district court's order denying State Farm's motion to compel arbitration.

### III

The district court found that the Hansens were entitled to recover reasonable attorney fees under I.C. § 41–1839. State Farm contends that *any* award of fees under I.C. § 41–1839 is not justified due to Hansens' failure to provide proof of loss prior to the action against State Farm. We agree and reverse the award of attorney fees.

The relevant portion of I.C. § 41–1839 reads as follows:

"**41–1839. Allowance of attorney fees in suits against insurers.**—(1) Any insurer issuing any policy, certificate or contract of insurance, surety, guaranty or indemnity of any kind or nature whatsoever, *which shall fail for a period of thirty (30) days after proof of loss has been furnished* as provided in such policy, certificate or contract, to pay the person entitled thereto the amount justly due under such policy, certificate or contract, shall in any action *thereafter brought* against the insurer in any court in this state for recovery under the terms of the policy, certificate or contract, pay such further amount as the court shall adjudge reasonable as attorney's fees in such action." (Emphasis added.)

I.C. § 41–1839 provides an incentive to an insurer to settle just claims made under a policy held by the insured; its aim is to prevent litigation and the high costs associated with it. Once an insured has presented a claim against the insurer *and* provided proof of his insured loss, he should not have to resort to litigation to collect on his insurance policy. If he is forced to do so, the economic risk of the litigation process is that of the insurer, not the insured. The language of this section is clear and unambiguous. An insured is entitled to an award of attorney fees only if (1) he has provided proof of loss as required by the insurance policy; (2) the insurance company fails to pay an amount justly due under the policy within thirty days of such proof of loss; and (3) the insured "thereafter" is compelled to bring suit to recover for his loss.

The evidence in the record in the present case indicates that the Hansens failed to meet these requirements, because they failed to provide proof of loss prior to bringing suit against State Farm. The district court found that State Farm was not furnished proof of loss until May, 1984, over five months following the filing of the complaint by Hansens. The district court also found that it was only then that State Farm became aware of Mr. Hansen's disabling hip injury. State Farm then offered $13,500 to the Hansens. The district court, having erroneously concluded that stacking was permitted and that there was $30,000 in insurance coverage, construed the "thereafter brought" language in I.C. § 41–1839(1) as meaning any time after bringing suit, even up to the actual trial. The district court erred in so construing § 41–1839(1). The proof of loss under the statute must be furnished thirty days prior to bringing the action.

The only information provided to State Farm by the Hansens prior to initiating their lawsuit were routine doctor bills which were paid by State Farm under the medical coverage provisions of the policy.[9] The record contains no evidence that Hansens provided any reports from physicians or Mr. Hansen's employer regarding his loss of employment or regarding any loss suffered by Mrs. Hansen apart from the medical bills submitted to and paid by State Farm, nor was any written demand made upon State Farm under the uninsured motorist coverage prior to filing suit. We therefore reverse the decision of the district court awarding attorney fees to the Hansens.

The decision of the district court regarding the stacking of coverage under the Hansens' three policies with uninsured motorist coverage is reversed and remanded to the district court for entry of an amended judgment reflecting liability under the single uninsured motorist coverage provi-

---

**9.** The record indicates that some medical bills were paid even after the lawsuit was brought.

sion of the insurance policy covering the 1972 MGB. The decision of the district court denying State Farm's motion to compel arbitration is affirmed on different grounds. The decision of the district court awarding attorney fees is reversed.

Since we are affirming in part and reversing in part, we award no costs or attorney fees on appeal.

DONALDSON, J., and McFADDEN, J. pro tem., concur.

SHEPARD, Chief Justice, dissenting.

I disagree with, and therefore dissent from, Part I of the majority opinion which addresses the "stacking" issue.

The majority correctly points out that at the time of the trial court decision in the instant case, our decision in *Dullenty v. Rocky Mountain Fire & Cas. Co.*, 111 Idaho 98, 721 P.2d 198 (1986), had not been issued. The majority here states, "The rationale of our decision in *Dullenty* is equally applicable to the present case." I disagree.

The facts of *Dullenty* differ materially from the facts of the instant case. Dullenty owned three motor vehicles, only one of which was insured by Rocky Mountain. The other two vehicles were insured by a different carrier, but nevertheless Dullenty asserted that he was covered under the Rocky Mountain policy against uninsured motorist provisions, although operating a vehicle not insured by Rocky Mountain. The Rocky Mountain policy specifically excluded such coverage while operating a vehicle owned by Dullenty but not insured by Rocky Mountain.

In contrast, the facts of the instant case indicate that the Hansens owned three vehicles, all of which were covered by policies issued by State Farm for which premiums were paid, and each of which policies contained uninsured motorist coverage.

In *Dullenty*, although the Court was urged to address the stacking issue in the abstract and beyond the particular facts of *Dullenty*, the Court declined to do so, stating:

In sum, we find nothing in our statutory scheme of automobile insurance which specifically requires an insurance carrier to extend coverage to an insured occupying an owned vehicle *which is not insured by the carrier under a motor vehicle liability policy.* We find no public policy implicit in our statutory scheme of automobile insurance which should require such coverage and thus invalidate the exclusionary clause in the instant case. We do not speak to and specifically reserve the question in a circumstance as is presented in *Hammon* where an insured under two or more motor vehicle liability policies, *each issued by the same carrier, and each of which insures a separate vehicle, and in each of which policies issued by the same carrier the insured has elected to and paid a premium for uninsured motorist coverage.* Such a case, of course, would then involve the issue of stacking the coverages under each of the policies issued by the same carrier. Since we have held today that the exclusionary clause in the instant policy eliminates coverage while the insured is occupying another owned vehicle, *uninsured by the same carrier,* and have held that such exclusionary clause is not void as against public policy, we need not address the stacking issue in the instant case. (Emphasis added.)

Hence, in my view the Court in *Dullenty* declined to address, and specifically reserved for a future time, the stacking issue when multiple vehicles are owned but all insured by a single carrier, the fact pattern of the instant case. Since that issue was not addressed in *Dullenty*, it must be addressed today.

As above noted, the majority opinion asserts that the "rationale" of *Dullenty* is applicable here. The ultimate "rationale" of *Dullenty* was that an insurance carrier must be able to adequately assess the risks against which it insures, and charge premiums to compensate the carrier for the risks it assumes.

The Court in *Dullenty* stated:

We view the business of insurance as relatively simple in concept but complex in its detail. One purchases insurance as a hedge against risk. Thereby that risk is transferred partly or wholly to an insurance carrier. An insurance carrier will only remain in business if it is able to adequately assess the reality and the magnitude of the risk, and through the underwriting process charge premiums which will adequately compensate the carrier for the risks assumed. If a carrier fails to adequately assess or charge for the risks assumed, it will not be long in business. . . .

. . . .

If [a carrier] is required to insure against a risk of an undesignated but owned vehicle, or a different and more dangerous type of vehicle of which it has no knowledge, it is thereby required to insure against risks of which it is unaware, unable to underwrite, and unable to charge a premium therefor.

In the instant case State Farm insured all three vehicles owned by the Hansens and charged and accepted a premium for its coverage on all three vehicles. It cannot be said that State Farm was thereby required to insure against risks of which it was unaware, unable to underwrite, and unable to charge a premium therefor. In those respects the instant case is not governed by either the facts nor the rationale of *Dullenty*.

I would therefore affirm the district court on the stacking issue.

HUNTLEY, J., concurs.