Chief Justice EISMANN,
dissenting.
Because the majority usurps the authority of the legislature and the director of the Department of Insurance to strike a provision from an insurance contract that the majority simply happens to dislike, I respectfully dissent.
This case revolves around a policy provision which provides, with respect to underinsured motorist (UIM) coverage, “We will pay under this coverage only after the limits of liability under any bodily injury liability bonds or policies have been exhausted by payment of judgements or settlements.” (Bold type in original.) This provision, an exhaustion clause, is concededly unambiguous. The majority strikes it from the insurance policy on the ground that it allegedly violates public policy and the newly created doctrine of judicial economy. As will be shown, there is no recognized public policy in Idaho that it violates and the doctrine of judicial economy is nonsensical. In actuality, it is the majority opinion that violates public policy as expressly declared by statute.
Before addressing Idaho’s public policy, I will address the majority’s assertion that “[n]early every jurisdiction with a statutory UIM mandate similar to Idaho’s has found exhaustion clauses to be contrary to public policy.” We would not condone our children’s misconduct based upon the excuse that other kids were doing it too, and such an argument does not validate the majority opinion. Whatever may be the authority of courts in other jurisdictions to modify insurance contracts, in Idaho “[ejourts do not possess the roving power to rewrite contracts in order to make them more equitable.” Lovey v. Regence BlueShield of Idaho, 139 Idaho 37, 41, 72 P.3d 877, 881 (2003); accord Losee v. Idaho Co., 148 Idaho 219, 223, 220 P.3d 575, 579 (2009). The exhaustion clause must violate the public policy of Idaho, not that of some other state.
“Public policy may be found and set forth in the statutes, judicial decisions or the constitution.” Bakkerv. Thunder Spring-Ware-ham, LLC, 141 Idaho 185, 189, 108 P.3d 332, 336 (2005). Thus, the question is what statute, judicial decision, or constitutional provision declares a public policy that is violated by the exhaustion clause. Each of the three sources of public policy will be addressed separately.
1. Constitutional provision. Public policy may be found in the Constitution. Id. The majority does not contend that the exhaustion clause violates any constitutional provision.
2. Statute. The majority cites Idaho Code § 41-2502 as amended in 2008, but it is clear that the exhaustion clause does not expressly or implicitly violate any public policy declared by that statute. First, that stat *632 ute does not even apply to the insurance policy in this case. It only applies to “the issuance of any new policy or the first renewal or replacement of any existing policy of motor vehicle liability insurance with an effective date on or after January 1, 2009.” Idaho Code § 41-2502(3) (2010) (emphasis added).[11] The insurance policy in this ease had an effective date of July 19, 2005, almost three and one-half years prior to January 1, 2009.[12] The majority’s assertion that the exhaustion clause in this policy violates some public policy declared by the 2008 amendment to the statute is directly contrary to the legislature’s expressly declared public policy regarding the insurance policies to which the amendment applies.
Second, the statute requires insurance companies to offer UIM coverage, but Idaho Code § 41-2502(2) grants the named insured “the right to reject either or both uninsured motorist coverage or underinsured motorist coverage.” Because the insured has the right to reject UIM coverage entirely, it is difficult to see how there is a public policy prohibiting an insured from entering into an insurance contract that requires exhaustion of the limits of the tortfeasor’s liability policy before the insured can collect UIM benefits.
Third, even if the 2008 amendment had applied to the policy in this case, the statute does not expressly or implicitly address exhaustion clauses or any of the procedures applicable to making a claim under UIM coverage. The majority concedes, “The Idaho Code neither requires nor expressly permits exhaustion clauses,” and the majority does not identify any statutory provision even allegedly implicitly violated by the exhaustion clause. The 2008 amendment merely requires insurance companies to offer underinsured motorist (UIM) coverage in their motor vehicle liability policies. It does not in any way purport to address the procedures for making a claim under such coverage. The majority cannot explain how a requirement that an insured establish that the tortfeasor was in fact underinsured as a precondition to recovering UIM benefits violates the public policy requiring insurance companies to merely offer UIM coverage in their motor vehicle liability policies. It states, “The Legislature clearly enacted the UIM amendments to protect the citizens of this State from being undercompensated for their injuries____” It also refers to “Idaho’s UIM mandate [that] was designed to protect the public from underinsured motorists----” The majority seems to think that UIM coverage is mandatory, rather than coverage that the insured has the option to purchase. The majority’s hyperbole indicates it believes that a statute simply requiring insurance companies to offer UIM coverage will somehow magically reduce accidents caused by under-insured motorists. •
In fact, it is the majority opinion, not the exhaustion clause, that violates public policy as expressly declared by statute. Idaho Code § 41-2502(1) requires that insurers offer uninsured and underinsured coverage in their motor vehicle liability insurance policies “under provisions approved by the director of the department of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured and under-insured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom.” (Emphasis added.) The public policy declared by statute is that the director of the Department of Insurance, not this Court, has the authority to determine whether provisions of an insurance policy that do not conflict with any express statutory requirement are consistent with public policy. There was a time when this Court correctly refused to usurp the authority granted by the legislature to the director.
*633 In Hammon v. Farmers Insurance Co. of Idaho, 109 Idaho 286, 707 P.2d 397 (1985), the insureds were injured when they swerved to avoid an oncoming vehicle that had crossed into their lane of travel and crashed. The uninsured motorist coverage of their insurance policy included injury by “hit-and-run” vehicles, but it required that such vehicles have “physical contact” with the insured or the vehicle the insured was occupying. By swerving, the insureds had avoided colliding with the oncoming vehicle, so there was no physical contact with that vehicle. They sued, contending that the physical-contact requirement in their insurance policy was void as against public policy. In deciding that it was not, we stated, “Because the Idaho statute neither mandates nor prohibits uninsured motorist coverage in hit-and-run situations, the physical contact requirement becomes a matter of contract between the insured and the insurer which we will not disturb.” Id. at 289, 707 P.2d at 400.
We noted, referring to Idaho Code § 41-2502, that “the uninsured motorist statute itself specifically mentions that automobile insurance policies must be approved by the director.”[13] We then stated, “The director’s construction of insurance policies is entitled to great weight and will be followed by this Court absent cogent reasons for holding otherwise.” Id.
Justice Bistline dissented in Hammon, making arguments similar to those in the majority opinion in the instant case. He wrote, “a growing number of courts, like the Court of Appeals, have found that physical contact requirements violated the intent of these statutes [like Idaho Code § 41-2502].” Id. at 290, 707 P.2d at 401 (emphasis in original). He contended that this Court should not “dwell[ ] on the face value of the words of the statute,” but should “probe deeper for a statute’s meaning.” Id. at 291, 707 P.2d at 402. He argued, “In reviewing the uninsured motorist coverage statute, to end all analysis at the surface is to frustrate the statute’s purpose.” Id. Quoting from the Supreme Court of Hawaii, he called the physical-contact requirement an “arbitrary barricade erected to eliminate all claims for damages resulting from one car accidents” and stated that such requirement “unjustifiably impedes effectuation of the statutory policy of protection for insureds against damage from the negligence of unidentified drivers.” Id. He concluded by criticizing the director of the Department of Insurance, stating, “As a final thought, the Director of the Department of Insurance may be elated to discover that his apparent approval of the defendant carrier’s policy may be the very factor which today has thrown the scales of justice out of balance.” Id. at 292, 707 P.2d at 403. Fortunately, the majority in Hammon was not swayed by Justice Bistline’s hyperbole.
In Hansen v. State Farm Mutual Automobile Insurance Co., 112 Idaho 663, 735 P.2d 974 (1987), the insureds brought an action to recover under the uninsured motorist (UM) coverage of three different motor vehicle policies issued by State Farm for three separate vehicles. Because the insureds claimed that their damages exceeded the policy limit of the UM coverage in the policy covering the vehicle they were occupying when it was struck by an uninsured driver, they contended that they were entitled to stack the uninsured motorist coverages of all three policies. The policies each had an anti-stacking clause, but the trial court held that such clause violated public policy. On appeal, we reversed the trial court.
In doing so, we recognized the authority granted by the legislature to the director of the Department of Insurance to determine whether insurance policy provisions comport with public policy. We stated, “The Director *634 of the Department of Insurance is the person entrusted by the legislature to determine whether or not given policies comport with the public interest. Policies approved by the Director are thus presumed to be in harmony with public policy.” Id. at 667-68, 735 P.2d at 978-79. We then stated, “In the absence of proof that a policy contains provisions which conflict with express legislative directives, the Director’s approval of an insurance policy form is an administrative determination that the policy form is in the ‘public interest.’ ” Id. (emphasis added).
There is no contention that the exhaustion clause conflicts with any express legislative directives. Indeed, it is the majority opinion that conflicts with the express legislative directive that it is the director of the Department of Insurance who is granted the authority to approve of provisions in underinsured motoi’ist coverage and to determine if they are in accordance with public policy. As we recently stated, “Policies that are approved by the Director of the Department of Insurance are presumed to be in accordance with public policy. Absent an assertion to the contrary, this Court assumes the policy was submitted to and approved by the Director.” American Foreign Ins. Co. v. Reichert, 140 Idaho 394, 399, 94 P.3d 699, 704 (2004) (citations omitted).
3. Judicial decision. Prior to 2008, there were no statutes in Idaho dealing with UIM coverage. In Meckert v. Transamerica Insurance Co., 108 Idaho 597, 701 P.2d 217 (1985), this Court held that there was no public policy in Idaho regarding UIM coverage. We stated as follows:
[T]he Idaho statutes do not regulate underinsured motorist coverage. There are no requirements that insurance carriers offer such underinsured motorist coverage, nor that motorists have such underinsured coverage. Neither the Idaho legislature nor the courts have declared that there exists a public policy applicable to underinsured motorist coverage. While such a policy might be desirable, that public policy should be enunciated by our legislature and not by this Court.
Id. at 600, 701 P.2d at 220 (italics in original; citations omitted). We reiterated that holding in Erland v. Nationwide Insurance Co., 136 Idaho 131, 133, 30 P.3d 286, 288 (2001), wherein we stated, “There exists no public policy in regard to underinsured motorist coverage.”
The majority contends that public policy has somehow changed and that “the exhaustion clause is void based on Idaho’s declared public policy favoring UIM coverage and on the doctrine of judicial economy.” Neither of these rationales makes sense.
The majority does not explain where this alleged doctrine of “favoring UIM coverage” arises, since the legislature only required that insurance companies offer such coverage and expressly provided that insureds can reject it. Does that mean UIM coverage is more favored than other types of insurance coverage? Can a court modify to its liking contractual provisions regarding UIM coverage, but not fire coverage or theft coverage?
This Court has never recognized a “doctrine of judicial economy,” whatever that is. The majority’s list of examples allegedly supporting this doctrine are totally unsupported by anything in the record, nor is there anything indicating how often, if at all, they have occurred in Idaho. We have encouraged court procedures that promote judicial economy and have recognized that the doctrine of res judicata is based, in part, upon judicial economy, but we have never stricken or modified a contractual provision on the ground that doing so would promote judicial economy. If that supposed doctrine trumps contractual provisions, a court presiding over a breach of contract case should simply declare void the contractual provision(s) allegedly violated in order to avoid the necessity of further court proceedings and thereby promote judicial economy. In actuality, in this case following the law and sustaining the exhaustion clause would promote judicial economy. The case would be ended.
In an attempt to justify its opinion, the majority states, “There might be reasons for a claimant to settle below policy limits that are unrelated to the amount of damages the claimant has suffered.” That was certainly true in this case. Plaintiff settled for $1,000 less than the tortfeasor’s policy limits be *635 cause prior to settling neither the Plaintiff nor her attorney had ever read her insurance policy, and neither of them knew she had UIM coverage. During oral argument, the followed exchanged occurred:
Justice Warren Jones: Do you say that she didn’t think she had underinsured coverage at the time she settled?
Mr. Johnson: That’s correct, your Honor. She thought that she just had a bare bones policy and didn’t have underinsured motorist coverage.
Justice Warren Jones: Okay.
Mr. Johnson: She wasn’t aware of the exclusion that I just mentioned on page nineteen of her policy that states that American Family will pay under coverage only after the limits of liability under any policy, liability bonds or policies have been exhausted by payment or judgments or settlement.
The policy states in bold letters at the top of the first page, “PLEASE READ YOUR POLICY.” Had either the Plaintiff or her attorney read Plaintiffs insurance policy, they would have known of the exhaustion clause and undoubtedly would not have settled with the tortfeasor for $1,000 less than the limits of his liability coverage. Had they refused to settle for less than the policy limits of $25,000, the tortfeasor’s insurer would undoubtedly have paid the policy limits rather than incurring thousands of dollars in legal fees in an attempt to save $1,000. We have previously stated, “It is certainly not the law in Idaho that an insured has no obligation to read his policy....” Foster v. Johnstone, 107 Idaho 61, 67, 685 P.2d 802, 808 (1984). Apparently, the public policy underlying the newly created “doctrine of judicial economy” is that insureds, and their attorneys, should not be burdened with reading insurance policies and that there should be no consequences from failing to do so. Judicial economy is apparently also promoted by modifying insurance contracts to avoid malpractice claims against attorneys who advise their clients to settle claims against tortfeasors with insufficient liability insurance coverage before determining whether their clients have UIM coverage and, if so, the policy provisions applicable to such coverage.
In addition, the majority opinion does not merely apply to claimants who choose to settle for less than the tortfeasor’s policy limits. It would also apply to cases in which the insured’s claim against the tortfeasor went to trial, and the jury verdict was for less than the tortfeasor’s policy limits. Under the majority opinion, the insured would be able to still make a claim under the UIM coverage, hoping to be more successful the second time.
The majority states, “Exhaustion clauses have no purpose but to dilute Idahoans’ protection against underinsured drivers and to prevent insureds from collecting legitimate claims.” Of course, there is absolutely nothing in the record supporting this hyperbole, and it is more indicative of a belief in a grand conspiracy among evil insurance companies than any understanding as to the purpose of an exhaustion clause. The majority faults me for not offering a “legitimate alternative reason why an insurer would insert such a clause into its policies.” I have not done so because that was not an issue litigated below, and there is no evidence in the record regarding it. Although I could hypothesize a reason, I prefer to make decisions based upon facts in the record rather than upon wild accusations. There is likewise nothing in the record to support the majority’s claims regarding the difficulties that may be caused by the exhaustion clause, nor is there any evidence as to how often, if ever, such difficulties have occurred in Idaho. By asserting that the court can void contractual provisions that may possibly, in some unknown percentage of cases, increase judicial workloads, the majority is confused about its proper role. It apparently believes it is also the legislative body in this state.
There was a time when this Court recognized its proper role and the limits of its knowledge and authority. In Blackburn v. State Farm Mutual Automobile Insurance Co., 108 Idaho 85, 697 P.2d 425 (1985), the plaintiff had obtained a judgment for $150,000 against the driver of a car that collided with a vehicle occupied by his wife and three of his children. She and one child were killed and the other two children were injured. The tortfeasor’s liability insurer *636 paid the policy limits of $20,000, of which the plaintiff received $10,000. He then brought an action against his own insurance company seeking to recover under his uninsured motorist coverage. He contended that the tortfeasor was an uninsured motorist to the extent that his liability insurance was insufficient to compensate the plaintiff for his damages. The plaintiff asked this Court to so hold by following the reasoning of the Arizona and Hawaii Supreme Courts.
We noted “the anomaly [sic] presented by the circumstances, particularly that a holder of a policy containing uninsured motorist coverage may well be in a better position if a tortfeasor carries no insurance whatsoever rather than carrying the minimum coverage mandated by the statute.” Id. at 90, 697 P.2d at 430. However, we correctly refused to follow the example of the Arizona and Hawaii courts because “such clearly would be to indulge in judicial legislation under the guise of statutory interpretation.” Id. We understood that such judicial rewriting of insurance policies could likely result in an increase of insurance costs to the motoring public. Id. We recognized that the plaintiff was, in actuality, asking us to make a policy decision, which “should rest on factors militating for or against that decision.” Id. We held, however, that such policy decision should be made by the legislature based upon adequate information. We stated, “However, all of such questions should be dealt with on the basis of adequate information (little of which is before this Court) by a legislative body equipped and authorized to make such policy decisions.” Id.
In the instant case, the majority has indulged in judicial legislation under the guise of some ill-defined public policy and a newly created doctrine of judicial economy. The policy decision of whether to prohibit exhaustion clauses should be made by the legislature, or by the director of the Department of Insurance, based upon adequate information, which the majority lacks. In Blackburn, this Court “urge[d] legislative attention to the inequitable results which flow from the language of our statutes.” Id. However, in Blackburn, Hammon, and Hansen, this Court understood its proper role and had the rectitude to refrain from usurping the authority of the legislature and the director of the Department of Insurance. We should follow that example.
Justice HORTON concurs.

. This subsection provides:
Prior to the issuance of any new policy or the first renewal or replacement of any existing policy of motor vehicle liability insurance with an effective date on or after January 1, 2009, a named insured shall be provided a standard statement approved by the director of the department of insurance, explaining in summary form, both uninsured and underinsured motorist coverage, and the different forms of under-insured motorist coverage that might be available from insurers in Idaho.

. The policy stated that it was "EFFECTIVE FROM 07-19-2005 TO 12-22-2005.” (Bold type in original.)

. Prior to the 2008 amendment of Idaho Code § 41-2502, it provided that motor vehicle liability policies must include uninsured motorist coverage, unless the insured rejected that coverage. The statute also stated that the coverage was to be "under provisions approved by the director of the department of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefore.” Ch. 61, § 1, 1967 Idaho Sess. Laws 124, 125. Except for adding "and underinsured” before the words "motor vehicle,” that provision remained unchanged when the statute was amended in 1988 to include underinsured coverage. Ch. 69, § 1, 2008 Idaho Sess. Laws 183, 183.