JONES, Justice, dissenting.
A. The Policy does not violate public policy.
I feel compelled to dissent in this case because I am convinced that there is no public policy in Idaho favoring required underinsured motorist ("UIM") coverage. The primary case upon which the majority relies, Hill v. American Family Mutual Insurance Co. , 150 Idaho 619, 249 P.3d 812 (2011), was a contentious decision as evidenced by the three-two split. In Hill , this Court analyzed whether exhaustion clauses in UIM insurance contracts violate Idaho public policy. Id. The exhaustion clause at issue created a condition precedent to UIM benefits, "entitling Hill to coverage only if she settle[d] or receive[d] a payment for the tortfeasor's policy limits." Id. at 623, 249 P.3d at 815. Ms. Hill settled for $1,000 less than the at-fault driver's insurance policy limit; thus, Ms. Hill's insurer relied on the exhaustion clause to deny Ms. Hill UIM coverage. Id. at 621, 249 P.3d at 814. In authoring the majority of Hill , I concentrated on the exhaustion clause and concluded that it did not make sense to require a claimant to exhaust the last $1,000 of a policy in order to qualify for UIM coverage. Unfortunately, Ms. Hill's public policy argument was not given as much weight in reaching this decision. In revisiting the question of the public policy of UIM coverage, I am now convinced that there is no, and never has been, public policy favoring required UIM coverage.
The plain language of Idaho Code section 41-2502 makes it clear that UIM coverage is not required by the statute. Further, there is no provision in the statute that sets forth the scope, application, or requirement of UIM coverage. It is clear, therefore, that there is no "mandate" for UIM coverage. The dissent in Hill correctly identified this point, setting forth "[t]he 2008 amendment merely requires insurance companies to offer [UIM] coverage in their motor vehicle liability policies. It does not in any way purport to address the procedures for making a claim under such coverage." Id . at 632, 249 P.3d at 825 (Eismann, J., dissenting).
Additionally, " Idaho Code [section 41-2502(1) ] requires that insurers offer uninsured and underinsured coverage in their motor vehicle liability insurance policies 'under provisions approved by the director of the department of insurance , for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured and underinsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom.' " Id . at 632, 249 P.3d at 825. (Emphasis in original.) "The public policy *440 declared by statute is that the director of the Department of Insurance, not this Court, has the authority to determine whether provisions of an insurance policy that do not conflict with any express statutory requirement are consistent with public policy. There was a time when this Court correctly refused to usurp the authority granted by the legislature to the director." Id .
In Hansen v. State Farm Mutual Automobile Insurance Company , 112 Idaho 663, 735 P.2d 974 (1987), this Court similarly recognized "[t]he Director of the Department of Insurance is the person entrusted by the legislature to determine whether or not given policies comport with the public interest. Policies approved by the Director are thus presumed to be in harmony with public policy. In the absence of proof that a policy contains provisions which conflict with express legislative directives, the Director's approval of an insurance policy form is an administrative determination that the policy form is in the 'public interest.' " Id . at 667-68, 735 P.2d 974, 978-79. Accordingly, "[p]olicies that are approved by the Director of the Department of Insurance are presumed to be in accordance with public policy. Absent an assertion to the contrary, this Court assumes the policy was submitted to and approved by the Director." Hill , 150 Idaho at 634, 249 P.3d at 827 (Eismann, J., dissenting) (citing American Foreign Ins. Co. v. Reichert , 140 Idaho 394, 399, 94 P.3d 699, 704 (2004) ). Applying these principles to the present case, it is clear that the majority has impermissibly stepped into the role of the Director by invalidating Ms. Eastman's insurance exclusion on the premise that it violates Idaho public policy.
Absent compelling public policy, the plain and unambiguous language of an insurance contract should be enforced. In Blackburn v. State Farm Mutual Automobile Insurance Company , two cars, containing the members of the Blackburn and Day families, were stopped in a highway emergency lane when a car driven by Mr. Ellsworth struck them. 108 Idaho 85, 697 P.2d 425 (1985). Mr. Blackburn's wife and one of his children were killed and two of his other children were injured. Id. One member of the Day family was killed and others were injured. Id. Mr. Ellsworth held an insurance policy that was limited at $20,000 per occurrence. Id. Mr. Blackburn sued Mr. Ellsworth and recovered $150,000. Id. at 86, 697 P.2d at 426. Mr. Blackburn and Mr. Day also received $10,000 each from Mr. Ellsworth's insurance policy. Id. Mr. Blackburn held his own insurance policy, which contained UIM protection of $30,000 per occurrence. Id. Mr. Blackburn made a claim on this policy, which was denied. Id. Thereafter, Mr. Blackburn initiated a lawsuit against his insurer arguing that Mr. Ellsworth should be considered an uninsured motorist because his insurance policy was insufficient to cover Mr. Blackburn's damages. Id. This Court stated:
We find nothing to indicate any legislative intent that the term "uninsured" should be construed to mean "underinsured" as asserted by the appellant here. To the contrary, the plain meaning of the statutes would appear to militate against the argument of Blackburn since the tortfeasor Ellsworth was covered with statutorily sufficient insurance, was thus "insured" rather than "uninsured."
Id. at 87, 697 P.2d at 427. After announcing its holding, this Court acknowledged the anomaly, noting that "a holder of a policy containing uninsured motorist coverage may well be in a better position if a tortfeasor carries no insurance whatsoever rather than carrying the minimum coverage mandated by the statute." Id. at 90, 697 P.2d at 430. However, this Court refused to "indulge in judicial legislation" and instead noted that such policy decisions should be made by the legislature upon adequate information because the legislature is the proper body "equipped and authorized to make such policy decisions." Id.
Another occasion to review the public policy relating to UIM coverage arose in Purdy v. Farmers Insurance Company of Idaho , when Ms. Purdy was injured while riding in someone else's car. 138 Idaho 443, 445, 65 P.3d 184, 186 (2003). Ms. Purdy collected the liability insurance policy limit from the at-fault driver's policy, and UIM coverage from the driver of the car in which she was a passenger, but the total amount that she collected was insufficient to cover her damages.
*441 Id. Accordingly, she filed a claim with Farmers to collect under the UIM coverage section of her policy. Id. Ms. Purdy's policy contained an Other Insurance provision that was identical to the Other Insurance provision at issue in this case. Id. This Court held that the Other Insurance provision was unambiguous and UIM coverage did not apply because the insurance policy of the driver of the car in which Ms. Purdy was a passenger provided UIM coverage. Id. at 448, 65 P.3d at 189.
The majority now claims "the public policy of this State clearly changed after Purdy as evidenced by the Legislature's decision to pass mandatory UIM coverage in Idaho Code section 41-2502(1)." However, as stated previously, the Legislature amended Idaho Code section 41-2502(1) in 2008 to expressly require that insurance companies offer UIM coverage. The best example that there is no public policy for UIM coverage is the fact that the statute clearly makes the coverage optional. If the Legislature intended to make UIM coverage a matter of public policy, it surely would have made UIM coverage mandatory. It can hardly be said that a voluntary choice of UIM coverage can be considered public policy. This is a point on which the public policy enunciated by this Court in Hill must be clarified. At one point in Hill , this Court referred to the 2008 Amendment as a "UIM mandate." Hill , 150 Idaho at 624, 249 P.3d at 817. However, as set forth above, the 2008 Amendment did not mandate UIM coverage. Indeed, in Hill this Court later clarified that the 2008 Amendment "mandat[es] insurers to at least offer UIM coverage in all insurance policies." Id .
Absent the majority's improper judicial legislation, Purdy remains good law. In Purdy , this Court upheld an Other Insurance provision that was identical to the clause at issue here. 138 Idaho at 451, 65 P.3d at 192. We should remember that we are dealing with automobile insurance. This is not health and accident or general casualty insurance. The statutes at issue in this case pertain to an automobile insurance policy purchased by Ms. Eastman. It is reasonable for the policy to limit recovery to injuries sustained while being in her own, insured car. To hold otherwise would open the door to automobile insurance applying to a wide range of situations not accounted for within the policy. Hypothetically, what if Ms. Eastman was walking to work and had been hit by an automobile while crossing the street. Would the majority think that she is covered by the UIM provision in her policy? Indeed, they make the argument that it was irrelevant Ms. Eastman was in someone else's car.
The district court found that this Court affixed public policy to the 2008 Amendment, but it has left uncertainty as to the limit, scope and breadth of that public policy. I agree. It is too uncertain to stretch such public policy to mandate that an insurer provide coverage for injuries occurring in a vehicle not covered in the parties' agreement when the vehicle that the plaintiff was hit with, and the vehicle plaintiff was hit in, both provided coverage. Although Ms. Eastman had the foresight to purchase $500,000 limits of UIM coverage, Farmers only offered and contracted to pay that limit under the requirement that she be injured in her own automobile, either as the driver or a passenger. Nothing in section 41-2502 prohibits that arrangement. Ms. Eastman is presumed to know the provisions of her coverage. She made the decision to occupy another car that was not insured by the UIM coverage which she purchased from Farmers. The unequivocal language of the Policy issued to Ms. Eastman controls the outcome in this case, and the $500,000 limit of her UIM Policy issued by Farmers is simply not involved.
While the 2008 Amendment is certainly a step in the right direction to protect Idaho motorists from the threat of underinsured motorists, it is far from an assurance that all Idaho motorists will be fully compensated for their injuries. The majority relies on Hill to claim that "the Legislature clearly enacted the UIM amendments to protect the citizens of this State from being undercompensated for their injuries ...." However, even if the 2008 Amendment was a broad UIM/UM mandate, the problem of undercompensated, injured motorists would persist because some injuries would inevitably exceed the coverage limit. The clear language of section 41-2502 does not require any minimum UIM coverage except the statutory requirement of section 49-117, which is the same minimum coverage *442 for any automobile insurance policies issued in Idaho, i.e., $25,000 liability coverage. I think most people would agree that requiring a minimum of $25,000 of liability insurance in Idaho essentially renders all persons insured in Idaho underinsured persons. They would certainly be underinsured for any accident producing serious, physical injuries. It seems questionable why, if the UIM coverage is considered mandatory, or a matter of public policy, that the Legislature would require no more coverage from anybody operating a car in Idaho than $25,000 liability coverage and optional UIM coverage of another $25,000.
Notably, the 2008 Amendment did not prohibit the limiting of UIM coverage in certain circumstances. While Ms. Eastman would have been better off if STA was uninsured rather than underinsured, the Policy language should not be ignored merely because STA's UIM limit was insufficient to meet Ms. Eastman's damages. This issue should be resolved by the legislature and, in the meantime, the clear and precise language of the Policy should be enforced. I would hold that the district court did not err by holding that the Policy's limitation of UIM coverage did not violate public policy. As concluded by Justice Eismann in the dissent in Hill , "in Blackburn , Hammon [v. Farmers Ins. Co. of Idaho, 109 Idaho 286, 707 P.2d 397 (1985) ], and Hansen , this Court understood its proper role and had the rectitude to refrain from usurping the authority of the legislature and the director of the Department of Insurance. We should follow that example." Hill , 150 Idaho at 636, 249 P.3d at 829 (Eismann, J., dissenting). The bottom line is that insurance is a form of risk management, not risk elimination. Unfortunately, as long as cars are driven, car accidents will occur and motorists will inevitably suffer serious injuries for which they are undercompensated. There is no way to eliminate this risk; thus, heartbreaking situations, such as the one at hand, will continue to occur.
B. Further, the district court did not err by holding that Ms. Eastman was not entitled to UIM coverage according to the Policy language.
While not fully addressed by the majority, Ms. Eastman also raises an argument that the district court erred by holding that she was not entitled to UIM coverage under the Policy language. Ms. Eastman advances three main claims to support her argument. First, she claims that Farmers' position-that the Other Insurance provision limits UIM coverage-is contrary to the Disclosure Statement, which described her UIM coverage as "offset" by any other UIM coverage, rather than precluded by any other UIM coverage. Second, Ms. Eastman claims that the Disclosure Statement must be incorporated into the Policy. Third, Ms. Eastman claims that she is entitled to the UIM coverage because Farmers' attempt to limit the UIM coverage was not done with "clear and precise" language.
Where language in an insurance policy is clear and unambiguous, "coverage must be determined in accordance with the plain meaning of the words used." Mutual of Enumclaw Ins. Co. v. Roberts , 128 Idaho 232, 235, 912 P.2d 119, 122 (1996). A provision in an insurance policy is ambiguous if it is reasonably subject to conflicting interpretations. City of Boise v. Planet Ins. Co. , 126 Idaho 51, 55, 878 P.2d 750, 754 (1994). Words in an insurance policy that have a settled legal meaning are not ambiguous merely because the policy does not contain a definition. Mutual of Enumclaw v. Wilcox, 123 Idaho 4, 8, 843 P.2d 154, 158 (1992).
North Pac. Ins. Co. v. Mai , 130 Idaho 251, 253, 939 P.2d 570, 572 (1997).
Ms. Eastman's first claim is unpersuasive because the Other Insurance provision is not contrary to the Disclosure Statement. The Disclosure Statement complies with Idaho Code section 41-2502 by explaining what the law requires and the types of UIM coverage that may be offered to insureds. Further, the Disclosure Statement essentially refers to the Other Insurance provision by highlighting the fact that UIM coverage may be limited in certain circumstances: "All auto liability insurance policies that include ... UIM coverage have other terms and conditions that may affect or limit the availability of ... coverage ." (Emphasis in original).
*443 Thus, the Other Insurance provision is not contrary to the Disclosure Statement.
Ms. Eastman's second argument is unpersuasive because it ignores that the Disclosure Statement included the following language: "This general explanation is NOT an insurance agreement. All auto liability insurance policies that include UM and/or UIM coverage have other terms and conditions that may affect or limit the available of either coverage. For a more detailed explanation of these coverages, refer to your policy. " (Emphasis in original). Ms. Eastman's argument-that the Disclosure Statement should be incorporated into the Policy-is untenable considering that the Disclosure Statement states "This general explanation is NOT an insurance agreement. " (Emphasis in original). The Policy does not provide illusory coverage because the Policy's UIM Coverage section would apply if STA's policy did not provide UIM coverage. See National Union Fire Ins. Co of Pittsburgh, P.A. v. Dixon , 141 Idaho 537, 542, 112 P.3d 825, 830 (2005) (Insurance coverage is not illusory if it "affords realistic protection of any group or class of injured persons.").
Third, Ms. Eastman's argument that Farmers' attempt to limit UIM coverage was not done with "clear and precise" language is unpersuasive, especially considering this Court's holding in Purdy , where an clause that is identical to the one at issue here was analyzed and held to have "unambiguously provide[d] that there is no coverage." 138 Idaho 443, 451, 65 P.3d 184, 192. In sum, the district court did not err by holding that Ms. Eastman was not entitled to collect UIM benefits under the Policy.
C. Farmers is entitled to attorney fees on appeal.
I would also award Farmers attorney fees on appeal under Idaho Code section 12-121. This Court has awarded attorney fees on appeal under Idaho Code section 12-121 when an appellant merely invited this Court to second guess the trial court. Crowley v. Critchfield , 145 Idaho 509, 514, 181 P.3d 435, 440 (2007). Here, Farmers is entitled to attorney fees on appeal because the district court authored a thorough and well-reasoned decision that was supported by law, and Ms. Eastman's appeal merely invited this Court to second guess the district court.
Justice HORTON CONCURS in dissent as to Parts A and B ONLY.