## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 36311

| | |
|---|---|
| MARCIE RAE HILL, | ) |
| | ) Boise, May 2010 Term |
| Plaintiff-Appellant, | ) |
| | ) 2011 Opinion No. 3 |
| v. | ) |
| | ) Filed: January 5, 2011 |
| AMERICAN FAMILY MUTUAL | ) |
| INSURANCE COMPANY, dba | ) Stephen W. Kenyon, Clerk |
| AMERICAN FAMILY INSURANCE, a | ) |
| foreign insurance corporation licensed to do | ) |
| business in the State of Idaho, | ) |
| | ) |
| Defendant-Respondent. | ) |
| | ) |

Appeal from the District Court of the Sixth Judicial District of the State of Idaho, Bannock County. Hon. Stephen S. Dunn, District Judge.

The decision of the district court is <u>vacated</u> and this case is <u>remanded</u> to the district court for further proceedings consistent with this Opinion. Costs to Appellant.

Johnson Olson Chartered, Pocatello, for Appellant. L. Charles Johnson argued.

Trout, Jones, Gledhill Fuhrman, PA., Boise, for Respondent. Christopher P. Graham argued.

_____

W. JONES, Justice

### I. NATURE OF THE CASE

In this case, an underinsured-motorist claimant asks this Court to invalidate an "exhaustion clause" requiring her to exhaust the full limits of the tortfeasor's insurance policy before being eligible for underinsured-motorist benefits.

### II. FACTUAL AND PROCEDURAL BACKGROUND

Marcie Hill, the appellant, was injured in a two-car accident with Andrea Hamilton in November of 2005. Andrea, who was fifteen years old, was talking on a cell phone when she unexpectedly turned her vehicle left in front of Hill's, who was approaching in the opposing lane

1

of traffic. Hill suffered injuries to her back and to her knee. Although she has received medical treatment, Hill claims that she still suffers from knee pain and loss of mobility for which she needs arthroscopic surgery.

At the time of the accident, Andrea's car was covered by an automobile-insurance policy held by her parents, Joseph and Jacqueline Hamilton. The Hamiltons' policy provided for up to $25,000 in bodily-injury coverage. Hill had an underinsured-motorist ("UIM") policy with American Family Mutual Insurance Company ("American Family"), the respondent, for up to $100,000 per person. The policy contained an "exhaustion clause" requiring her to deplete all of the tortfeasor's bodily-injury insurance before she could collect underinsurance benefits.

Hill filed suit against the Hamiltons but settled for $1000 less than the Hamiltons' $25,000 policy limits rather than litigating the case. She then asserted a claim for an additional $18,000 against American Family, an amount that included credit for the $1000 that she did not collect from the tortfeasor. American Family nonetheless denied the claim because Hill had not yet "exhausted" the tortfeasor's bodily-injury policy. Hill then filed this lawsuit against American Family alleging breach of contract and fraud and the parties submitted cross-motions for summary judgment. The district court granted summary judgment to American Family, finding that the exhaustion clause unambiguously required Hill to exhaust the Hamiltons' bodily-injury policy limits before she could receive UIM benefits. The court also found there to be no countervailing public policy in Idaho that overrides the plain language of the contract and allows Hill to recover. On appeal, Hill contends that because insurers are now statutorily mandated to offer UIM coverage in Idaho, the exhaustion clause offends public policy by requiring her to litigate her claim against the Hamiltons before being eligible to receive benefits.

### III. ISSUES ON APPEAL

1. Whether the district court properly granted summary judgment to American Family on Hill's claim for UIM benefits.

2. Whether Hill is entitled to attorney fees on appeal.

### IV. STANDARD OF REVIEW

This Court applies the same standard as the district court when reviewing a grant of a motion for summary judgment. *Shawver v. Huckleberry Estates, L.L.C.*, 140 Idaho 354, 360, 93 P.3d 685, 691 (2004). Since filing cross-motions for summary judgment does not change the standard of review, the Court evaluates each motion on its merits. *Stafford v. Klosterman*, 134 Idaho 205, 206, 998 P.2d 1118, 1119 (2000). Summary judgment is proper "if the pleadings,

2

depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). "This Court will liberally construe the record in favor of the party opposing the motion for summary judgment and will draw all reasonable inferences and conclusions in favor of that party." *Arreguin v. Farmers Ins. Co.*, 145 Idaho 459, 461, 180 P.3d 498, 500 (2008). The entire record is freely reviewed to determine if either side was entitled to summary judgment as a matter of law and to determine whether inferences drawn by the district court are reasonably supported by the record. *Potlatch Educ. Ass'n v. Potlatch Sch. Dist.*, 148 Idaho 630, 634, 226 P.3d 1277, 1281 (2010).

## V. ANALYSIS

### A. The Exhaustion Clause Is Void as Contrary to Public Policy

The dispositive issue here is whether American Family may rely on an exhaustion clause to deny Hill's UIM benefits solely because she settled for just under the tortfeasor's policy limits. The thrust of Hill's appeal is that the exhaustion clause contravenes Idaho's public policy of requiring UIM coverage, which is embodied in I.C. § 41-2502(1). Section 41-2502(1) requires all insurance carriers to offer UIM coverage with their policies.[1] Hill argues that this Court should adopt the doctrine of "constructive exhaustion" to allow her to collect UIM benefits above the tortfeasors' policy limits even if she settles for less than those limits. American Family responds that Idaho case law creates no public policy with respect to UIM claims.

> *1. The Exhaustion Clause Unambiguously Requires Hill to Exhaust the Tortfeasor's Insurance Policy*

A preliminary issue is to determine the legal effect of the exhaustion clause. A contract must be interpreted according to the plain meaning of the words used if the language is clear and unambiguous. *Cascade Auto Glass, Inc. v. Idaho Farm Bureau Ins. Co.*, 141 Idaho 660, 663, 115 P.3d 751, 754 (2005). An insurance policy is ambiguous if it is reasonably susceptible to different interpretations. *Armstrong v. Farmers Ins. Co.*, 143 Idaho 135, 137, 139 P.3d 737, 739

---

[1] This provision provides in relevant part:

> [N]o owner's or operator's policy of motor vehicle liability insurance . . . shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured *and underinsured* motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom.

I.C. § 41-2502(1) (emphasis added representing the 2008 amendment).

(2006). This Court freely reviews the question of whether an insurance contract is ambiguous. *Clark v. Prudential Prop. & Cas. Ins. Co.*, 138 Idaho 538, 541, 66 P.3d 242, 245 (2003).

Hill does not dispute that the UIM provision is clear. It reads:

> We will pay compensatory damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an underinsured motor vehicle. . . .
>
> . . . .
>
> We will pay under this coverage only after the limits of liability under any bodily liability bonds or policies have been exhausted by payment of judgments or settlements.

This language is boilerplate in the insurance industry, and a number of other jurisdictions have found virtually identical wordings to be unambiguous. *E.g. Robinette v. Am. Liberty Ins. Co.*, 720 F. Supp. 577, 579 (S.D. Miss. 1989); *Birchfield v. Nationwide Ins.*, 875 S.W.2d 502, 503 (Ark. 1994). The clause explicitly creates a condition precedent to UIM benefits, entitling Hill to coverage only if she settles or receives a payment for the tortfeasor's policy limits. *See Maroun v. Wyreless Sys., Inc.*, 141 Idaho 604, 614, 114 P.3d 974, 984 (2005) ("A condition precedent is an event not certain to occur, but which must occur, before performance under a contract becomes due." (quotation omitted)).

2.  *Exhaustion Clauses in UIM Insurance Contracts Are Void Because They Violate Idaho State Public Policy*

Next, this Court must determine whether the exhaustion clause violates public policy, which is a question of law. *Quiring v. Quiring*, 130 Idaho 560, 566, 944 P.2d 695, 701 (1997). The "liberty of contract is not an absolute and unlimited right, but upon the contrary is always subservient to the public welfare." *J.F. v. D.B.*, 879 N.E.2d 740, 741 (Ohio 2007) (citation omitted). "[T]he courts will not hesitate to declare void as against public policy contractual provisions which clearly tend to the injury of the public in some way." 17A C.J.S. *Contracts* § 218 (2010). "The usual test applied by courts in determining whether a contract offends public policy and is antagonistic to the public interest is whether the contract has a *tendency* toward such an evil." *Stearns v. Williams*, 72 Idaho 276, 283, 240 P.2d 833, 837 (1952) (emphasis added). "Public policy may be found and set forth in the statutes, judicial decisions or the constitution." *Bakker v. Thunder Spring-Wareham, L.L.C.*, 141 Idaho 185, 189, 108 P.3d 332, 336 (2005). Whether an insurance contract is against public policy "is to be determined from all the facts and circumstances of each case." *Foremost Ins. Co. v. Putzier*, 100 Idaho 883, 887, 606

4

P.2d 987, 991 (1980). In addition, "analogous cases involving the same general principles may be looked to by the court in arriving at a satisfactory conclusion." *Smith v. Idaho Hosp. Serv.*, 89 Idaho 499, 504, 406 P.2d 696, 699 (1965).

American Family is correct in that, as of yet, Idaho case law has only held that "[n]either the Idaho legislature nor the courts have declared that there exists a public policy applicable to underinsured motorist coverage." *Meckert v. Transamerica Ins. Co.*, 108 Idaho 597, 600, 701 P.2d 217, 220 (1985); *accord Erland v. Nationwide Ins. Co.*, 136 Idaho 131, 133, 30 P.3d 286, 288 (2001). The Court repeatedly indicated, however, that the sole reason there was no clear public policy regarding UIM coverage was because "Idaho statutes do not regulate underinsured motorist coverage." *Andrae v. Idaho Counties Risk Mgmt. Prog. Underwriters*, 145 Idaho 33, 36, 175 P.3d 195, 198 (2007) (citing *Meckert*, 108 Idaho at 600, 701 P.2d at 220). We have rejected public policy challenges related to UIM policies only because "our statutes do not require an automobile insurer to include underinsured vehicle coverage in its policies or even to offer this coverage to its insureds." *Farmers Ins. Co. v. Buffa*, 119 Idaho 345, 347, 806 P.2d 438, 440 (1991); *see also Nationwide Mut. Ins. Co. v. Scarlett*, 116 Idaho 820, 822, 780 P.2d 142, 144 (1989) (same).

In 2008, however, the Legislature did begin to require insurers to offer UIM coverage. It amended I.C. § 41-2502(1) to expressly require insurance companies to offer such provisions with automobile policies. Act of March 5, 2008, ch. 69, § 1, 2008 Idaho Sess. Laws 183, 183. Insureds now may only refuse this coverage if they do so in writing. *Id.* (codified at I.C. § 41-2502(2)). The amendment requires insurers to offer protection against "underinsured motor vehicles," defined as vehicles insured with limits at least at the statutory minimum for bodily injury or death.[2] § 2, 2008 Idaho Sess. Laws at 184 (codified at I.C. § 41-2503(2)). The Legislature accordingly intends to protect Idaho's citizens from drivers carrying policies above the statutorily required policy levels but who have insurance insufficient to compensate their tort victims.

The Legislature apparently enacted the amendment for two reasons. First, the most obvious is the threat that underinsured motorists pose to public safety. Idahoans suffering

---

[2] The minimum amount of required insurance is $25,000 per person and $50,000 per accident. I.C. § 49-117(18). Subject to some limited exceptions, nobody may operate a motor vehicle on public highways in Idaho without carrying the statutory minimum amount of liability insurance. *Id.* § 49-1428(1).

catastrophic injuries from drivers carrying insufficient coverage could find themselves without redress if they have no UIM policy.

Second, without UIM coverage, Idahoans injured by a totally uninsured driver sometimes recover more than those injured by underinsured drivers. Many drivers in Idaho injured by underinsured motorists had little recourse if they purchased uninsured-motorist ("UM") policies but had no UIM coverage, since those policies provided no benefits if the underinsured tortfeasor had at least the minimum required amount of insurance coverage. As this Court observed before the Legislature implemented the UIM mandate, many drivers in this state "may well be in a better position if a tortfeasor carries no insurance whatsoever rather than carrying the minimum coverage mandated by the statute," and that "the matter deserves legislative attention." *Blackburn v. State Farm Mut. Auto. Ins. Co.*, 108 Idaho 85, 90, 697 P.2d 425, 430 (1985); *see also Longworth*, 538 A.2d at 424 (stating that there is no reason why UM claimants should have immediate recourse against their insurer but not UIM claimants). The Legislature has addressed this anomaly by mandating insurers to at least offer UIM coverage in all insurance policies.

Before analyzing the public-policy issue further, however, it is necessary to note that the Director of the Department of Insurance presumably approved the terms in Hill's insurance policy. Absent an assertion to the contrary, this Court presumes that the insurance policy was submitted to the Director and was found to comport with public policy. *Am. Foreign Ins. Co. v. Reichert*, 140 Idaho 394, 399, 94 P.3d 699, 704 (2004). The Legislature has empowered the Director to invalidate an insurance policy for a number of reasons, including because it contains "any inconsistent, ambiguous, or misleading clauses, or exceptions and conditions which deceptively affect the risk purported to be assumed in the general coverage of the contract, or which are unfairly prejudicial to the policy holder." I.C. § 41-1813(2). Hill does not contend that the Director failed to review or disapproved her policy with American Family.

The Dissent contends that the Court should simply defer to the Director and hold that the policy comports with public policy, but the fact that the Director may have approved these contract terms merely creates a presumption that they are valid and is not conclusive. *Hansen v. State Farm Mut. Auto. Ins. Co.*, 112 Idaho 663, 667–68, 735 P.2d 974, 978–79 (1987). Of course, even if the Director has reviewed the terms in this case, the insurance policy here was executed before the Legislature amended the Code to require insurers to offer UIM coverage.

6

The Director could not have known about the Legislature's new public-policy decisions at that time.

Nearly every jurisdiction with a statutory UIM mandate similar to Idaho's has found exhaustion clauses to be contrary to public policy. *E.g. Country Mut. Ins. Co. v. Fonk*, 7 P.3d 973, 978 (Ariz. Ct. App. 2000); *Taylor v. Gov't Employees Ins. Co.*, 978 P.2d 740, 746, 751 (Haw. 1999); *Buzzard v. Farmers Ins. Co.*, 824 P.2d 1105, 1112 (Kan. 1992); *Aetna Cas. & Sur. Co. v. Faris*, 536 N.E.2d 1097, 1099–100 (Mass. App. Ct. 1989); *Chambers v. Aetna Cas. & Sur. Co.*, 658 A.2d 1346, 1348 (Pa. Super. Ct. 1995); *Rutgers Cas. Ins. Co. v. Vassas*, 652 A.2d 162, 172 (N.J. 1995); *Mann v. Farmers Ins. Exch.*, 836 P.2d 620, 621 (Nev. 1992) *overruled on other grounds by White v. Cont'l Ins. Co.*, 65 P.3d 1090, 1092 (Nev. 2003). *But see Ploen v. Union Ins. Co.*, 573 N.W.2d 436, 443 (Neb. 1998) (rejecting a public policy challenge).[3] These cases comport with the overall majority position nationwide that exhaustion clauses are void and, under the constructive-exhaustion doctrine,[4] do not prevent an insured from "exhausting" the tortfeasor's policy by settling for an amount less than the policy limits. *Farmers Ins. Exch. v. Hurley*, 90 Cal. Rptr. 2d 697, 700 (Cal. Ct. App. 1999); *Horace Mann Ins. Co. v. Adkins*, 599 S.E.2d 720, 729 n.12 (W. Va. 2004); *e.g. New Hampshire Ins. Co. v. Knight*, 506 So.2d 75, 77 (Fla. Dist. Ct. App. 1987); *Metcalf v. State Farm Mut. Auto Ins. Co.*, 944 S.W.2d 151, 153 (Ky. Ct. App. 1997). To prevent the UIM carrier from paying extra-contractual benefits, however, "the underinsurer always is allowed to credit the full amount of the tortfeasor's liability coverage against the insured's damages." *Hamilton v. Farmers Ins. Co. of Washington*, 733 P.2d 213, 217 (Wash. 1987); *accord Sorber v. Am. Motorists Ins. Co.*, 680 A.2d 881, 882 (Pa. Super. Ct. 1996).

---

[3] American Family relies heavily on a Wisconsin case, *Danbeck v. American Family Mut. Ins. Co.*, 629 N.W. 2d 150 (Wis. 2001), as an instance when a court rejected a public-policy challenge and enforced the literal language of an exhaustion clause. The Wisconsin Supreme Court, however, did not incorporate the state's statutory UIM mandate into its public-policy analysis, nor even mention that such a mandate existed, as the public-policy challenge in that case apparently rested only on common law. *Id.* at 156 (analyzing only an intermediate court's ruling on state public policy). Indeed, jurisdictions in which a UIM statute did not play into the legal analysis have tended to be more evenly divided on whether to enforce exhaustion clauses. *Compare Birchfield*, 875 S.W.2d at 504 (enforcing the exhaustion clause as written), *State v. Mummert*, 879 S.W.2d 525, 528–29 (Mo. 1994) (same), *with Omni Ins. Co. v. Foreman*, 802 So.2d 195, 197 (Ala. 2001) (holding that the UIM claimant did not forfeit her benefits by settling for less than the policy limits), *and Augustine v. Simonson*, 940 P.2d 116, 120 (Mont. 1997) (implementing the constructive-exhaustion doctrine). Here, of course, a statute does directly bear on the public-policy analysis, so these cases are inapplicable.

[4] Although most cases adopt this position, they do not necessarily use the term "constructive exhaustion." Instead, many jurisdictions state that the UIM carrier's payments are "offset" by the tortfeasor's policy limits. *Horace Mann Ins. Co. v. Adkins*, 599 S.E.2d 720, 727 (W. Va. 2004).

7

Conversely, nearly every state that has rejected the constructive-exhaustion doctrine has done so because a statute either expressly allowed or expressly required UIM coverage to be conditioned on an exhaustion clause like the one at issue here.[5] The Idaho statute, by comparison, simply requires insurance policies delivered or issued in Idaho to contain underinsurance coverage unless expressly rejected in writing by the insured. I.C. § 41-2502(1), (2).[6] The Idaho Code neither requires nor expressly permits exhaustion clauses.

This Court must therefore carefully evaluate whether requiring insureds to comply with UIM exhaustion clauses would thwart the Legislature's goal of protecting motorists from underinsured drivers. Because I.C. § 41-5202(1) is designed to remedy the public-safety problem created by underinsured drivers, it is a remedial statute. "It is a well-known canon of statutory construction that remedial legislation is to be liberally construed to give effect to the intent of the legislature." *State v. Hobby Horse Ranch Tractor & Equip. Co.*, 129 Idaho 565, 567, 929 P.2d 741, 743 (1996).

Other courts invalidating exhaustion clauses also observe that UIM statutes are remedial in nature. They reason that the insured's ability to recover UIM benefits should be "scrupulously guarded" because "UIM coverage is intended to provide excess coverage to compensate an insured against losses for which there would otherwise be no coverage."[7] *Horace Mann*, 599 S.E.2d at 725–26. Consequently, "[t]he exhaustion clause must be construed as it was intended, *i.e.*, a threshold requirement and not a barrier to underinsured motorist insurance coverage." *Bogan v. Progressive Cas. Ins. Co.*, 521 N.E.2d 447, 453 (Ohio 1988) *overruled on other grounds by McDonald v. Republic-Franklin Ins. Co.*, 543 N.E.2d 456 (Ohio 1989).

---

[5] *See Curran v. Progressive Nw. Ins. Co.*, 29 P.3d 829, 832–33 (Alaska 2001) (citing Alaska Stat. § 28.20.445); *Hurley*, 90 Cal. Rptr. 2d at 701 (citing Cal. Ins. Code § 11580.2(p)(3)); *Continental Ins. Co. v. Cebe-Habersky*, 571 A.2d 104, 106 (Conn. 1990) (citing Conn. Gen. Stat. § 38-175c(b)(1)); *Daniels v. Johnson*, 509 S.E.2d 41, 43 (Ga. 1998) (citing Ga. Code Ann. §§ 33-7-11(b)(1)(D)(ii), 33-24-41.1); *Lemna v. United Servs. Auto. Ass'n*, 652 N.E.2d 482, 484 (Ill. App. Ct. 1995) (citing 215 Ill. Comp. Stat. 5/143a-2(7) (1992)); *Federal Ins. Co. v. Watnick*, 607 N.E.2d 771, 774 (N.Y. 1992) (citing N.Y. Ins. Law § 3420(f)(2)); *see also McCrary v. Byrd*, 559 S.E.2d 821, 825 (N.C. Ct. App. 2002) (citing N.C. Gen. Stat. § 20-279.21(b)(4) (1999), stating that exhaustion occurs when the policy limits "have been paid upon the claim").

[6] Oregon, by contrast, has invalidated exhaustion clauses primarily on statutory grounds. *Vega v. Farmers Ins. Co.*, 918 P.2d 95, 99, 101 (Or. 1996).

[7] Some states take this a step further, holding that any attempt to condition, dilute, or limit UM or UIM coverage is void. *Union Ins. Co. v. Houtz*, 883 P.2d 1057, 1063 (Colo. 1994); *Brown v. USAA Cas. Ins. Co.*, 840 P.2d 1203, 1205 (Kan. Ct. App. 1992).

There might be reasons for a claimant to settle below policy limits that are unrelated to the amount of damages the claimant has suffered. Because it may be necessary or advantageous for insureds to accept a settlement, "[t]he insured should have the right to accept what he or she considers the best settlement available against the tortfeasor without relinquishing under-insurance protection." *Rucker v. Nat'l Gen. Ins. Co.*, 442 N.W.2d 113, 117 (Iowa 1989). The insured might wish to settle if the insurance limits are too low to justify trial. *Olivas v. State Farm Mut. Auto. Ins. Co.*, 850 S.W.2d 564, 567 (Tex. App. 1993). The insured might also have immediate financial or medical reasons for needing to settle the UIM claim below policy limits. *Cobb v. Benjamin*, 482 S.E.2d 589, 597 (S.C. Ct. App. 1997). If the insured has to exhaust the policy limits to keep his or her UIM coverage, the tortfeasor's insurance company could force the insured to go to court by offering just less than the policy limits. "In effect then, the victim is denied the perfectly reasonable choice of saving months, if not years, of delay, trial preparation expense, and all the ensuing wear and tear by simply accepting the offer." *Longworth v. Van Houten*, 538 A.2d 414, 423 (N.J. Super. Ct. App. Div. 1988). The litigation would also likely reduce the insured's net recovery. *Id.* There would be many instances where the claimant receives a greater recovery by settling than by paying a lawyer to pursue a lengthy and contentious trial for only a small amount more than the settlement offer.

Litigation would create drastic delays for litigants who may have suffered serious injuries and desperately need to collect benefits. These delays would be exacerbated by the fact that the claimant may have to undergo further arbitration against the UIM carrier after obtaining a judgment from the tortfeasor. *See Harper v. Providence Washington Ins. Co.*, 753 A.2d 282, 284–85 (Pa. Super. Ct. 2000) (permitting arbitration against a UIM carrier while the insured's claim against the tortfeasor was still pending).

UIM claimants in Idaho subject to exhaustion clauses like this one would have even greater difficulty collecting UIM benefits in collisions caused by more than one defendant. Although this particular issue is not presently before this Court, it highlights another reason for which many other jurisdictions have refused to enforce exhaustion clauses. In such a case, the claimant would still have to exhaust "any bodily injury liability bonds or policies" before being able to collect UIM payments. The claimant might not be able to exhaust one of the tortfeasors' policy limits, especially if that tortfeasor was less liable relative to the other defendants. *See* I.C. § 6-802 (permitting the court to apportion damages among defendants). As a New York court

9

reasoned, requiring the insured to exhaust all the insurance applicable to all vehicles involved in an accident "would emasculate the endorsement's intended effect . . . to provide coverage over and above the limits of the tortfeasor's insurance." *Colonial Penn Ins. Co. v. Salti*, 446 N.Y.S.2d 77, 79 (N.Y. App. Div. 1982). Due to the inequity that UIM claimants might face when confronted with multiple tortfeasors, other courts have permitted UIM insureds to pursue arbitration against the insurer at the same time claims are pending against multiple tortfeasors. *Leslie v. W.H. Transp. Co.*, 338 F. Supp. 2d 684, 689 (S.D. W. Va. 2004); *see also Gen. Accident Ins. Co. v. Wheeler*, 603 A.2d. 385, 387 (Conn. 1992) (requiring the claimant to exhaust only one tortfeasor's policy even though a statute expressly required exhaustion of all policies).

UIM claimants, in other words, are better equipped than their UIM carriers to most efficiently resolve claims against the tortfeasor. They are in the best position to determine whether it is worth the time and expense to litigate.

The Dissent asserts that the Legislature's 2008 UIM amendment "does not in any way purport to address the procedures for making a claim under such coverage," and therefore does not indicate that there is a legislative policy aimed at protecting Idahoans from underinsured motorists. The Legislature clearly enacted the UIM amendments to protect the citizens of this State from being undercompensated for their injuries, and exhaustion clauses impose a substantive, not merely procedural, obstacle in front of accident victims seeking UIM benefits. Requiring victims to actually exhaust the tortfeasor's policy limits is not the kind of UIM coverage the Legislature contemplated.[8]

Apart from the remedial nature of the UIM-mandate statute is the entirely separate public interest in judicial economy. "Public policy favors the resolution of controversies and uncertainties through compromise and settlement rather than through litigation." 15A Am. Jur. 2d *Compromise & Settlement* § 5. Exhaustion clauses harm the public interest in judicial economy in two ways. First, they encourage tortfeasors' insurers to litigate against UIM claimants. As previously mentioned, the tortfeasor's insurer could use an exhaustion clause to

---

[8] The Dissent also suggests that the Court is simply protecting accident victims who fail to read their insurance policies before settling for less than the tortfeasor's policy limits. Nothing in this Opinion should be read to relieve policyholders from having to read and understand their policies. As discussed throughout this Opinion, however, exhaustion clauses create myriad problems for insureds regardless of whether they read their policies. Insureds, aware of their exhaustion clauses, may have to undergo protracted and needless litigation despite needing immediate medical or financial support.

compel litigation by offering to settle for only just under the policy limits. The injured collision victim could have to endure needless delay and expense litigating or lose his/her benefits.

Second, Idaho's courts will have to contend with unnecessary litigation merely so that UIM claimants can preserve their benefits. *Schmidt v. Clothier*, 338 N.W.2d 256, 260 (Minn. 1983) (superseded by statute); *Augustine v. Simonson*, 940 P.2d 116, 120 (Mont. 1997). As this Court and the U.S. Supreme Court have held in cases discussing collateral estoppel and res judicata, reducing repetitive or unnecessary litigation is a legitimate goal, as it frees up judicial resources for legitimate disputes. *Allen v. McCurry*, 449 U.S. 90, 94, 101 S. Ct. 411, 415 (1980) (stating that both collateral estoppel and res judicata conserve judicial resources); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S. Ct. 645, 649 (1979) (similar); *Brown v. Felson*, 442 U.S. 127, 131, 99 S. Ct. 2205, 2209 (1979) (holding that res judicata "frees the courts to resolve other disputes"); *Maroun v. Wyreless Sys., Inc.*, 141 Idaho 604, 617, 114 P.3d 974, 987 (2005) (collateral estoppel); *Hindmarsh v. Mock*, 138 Idaho 92, 94, 57 P.3d 803, 805 (2002) (res judicata); *Anderson v. City of Pocatello*, 112 Idaho 176, 183, 731 P.2d 171, 178 (1986) (collateral estoppel); *see also Pines, Inc. v. Bossingham*, 131 Idaho 714, 717, 963 P.2d 397, 400 (Ct. App. 1998) (collateral estoppel).

Promoting an efficient judiciary ultimately benefits the public. Given all the potential reasons that a UIM claimant may need to settle for just under policy limits, it would be contrary to principles of judicial economy to require full exhaustion by litigation or settlement. *Cobb*, 482 S.E.2d at 596–97.

For the foregoing reasons, we now hold exhaustion clauses in UIM automobile policies to be void, unenforceable, and severable in Idaho. To collect against his or her insurer, a UIM insured may proceed against the UIM carrier, who must investigate and attempt to resolve the claim in good faith regardless of whether the insured settled with the tortfeasor's insurer or, if so, for how much. *Taylor*, 978 P.2d at 751. The UIM carrier will receive credit for the full amount of the tortfeasor's policy, regardless of the insured's actual recovery.

We decline to implement the constructive-exhaustion doctrine or to otherwise replace exhaustion clauses with any other judicially created language. This is primarily to prevent any confusion over how much settlement the insured must extract from the tortfeasor before approaching the UIM carrier for benefits. Hill suggested that courts should require the settlement amount to be "reasonable" in relationship to the tortfeasor's policy limits. A

11

"reasonableness" requirement is unnecessary for three reasons. First, the UIM claimant, not his or her insurer, has to absorb the gap between the settlement and the tortfeasor's policy limits. So long as there is no prejudice resulting from the settlement, there is simply no need for courts to determine whether the amount was "reasonable." Second, the UIM claimant is in the best position to efficiently resolve a claim by weighing the provable facts of the case, the financial or medical need for quick settlement, and the potential costs of litigation. A reasonableness requirement might obstruct otherwise efficient claim resolution or prolong the process by calling on the courts to evaluate whether the settlement amount was "reasonable." Third, asking judges to determine whether settlements are reasonable would draw the parties back into court and undermine the goal of promoting swift claim resolution and judicial economy.

Although Hill's exhaustion clause is void, the rest of her policy remains intact. "To the extent that a term requiring the occurrence of a condition is unenforceable [for public-policy reasons], a court may excuse the non-occurrence of the condition unless its occurrence was an essential part of the agreed exchange." Restatement (Second) of Contracts § 185 (1981); *see also Nelson v. Armstrong*, 99 Idaho 422, 426, 582 P.2d 1100, 1104 (1978) ("Where a transaction is composed of both benign and offensive components and the different portions are severable, the unobjectionable parts are generally enforceable."). Hill will not receive a better deal than she bargained for if she can show that an underinsured tortfeasor is liable to her for an amount exceeding his policy limits and then sets off those policy limits against her UIM recovery. *Augustine*, 940 P.2d at 268; *Rucker*, 442 N.W.2d at 117; *see also Bethlehem Steel Corp. v. Gorsuch*, 742 F.2d 1028, 1036 (7th Cir. 1984) (stating that the court "will not enforce the remainder of the contract if the result will be to give the promisee a substantially better deal than he had bargained for").

3. *Subsequent Changes in State Law That Are Designed to Protect the Public Welfare Can Invalidate a Contract Provision on Public Policy Grounds*

American Family contends that since the Legislature only began requiring insurers to offer UIM coverage in 2009, no statutory public policy aimed at protecting the public from underinsured drivers existed when Hill entered into her insurance contract in July of 2005. *See* § 1, 2008 Idaho Sess. Laws at 183–84 (amending I.C. § 41-2502 effective January 1, 2009). American Family reasons that this Court would be applying the statute retroactively if it allowed Hill to collect UIM benefits without having settled for the tortfeasors' policy limits.

12

It is true that § 41-2502 is not retroactive. No statute is retroactive unless the Legislature expressly declares that it is. I.C. § 73-101; *Henderson v. Smith*, 128 Idaho 444, 448, 915 P.2d 6, 10 (1996). "A statute will not be given a retroactive construction by which it will impose liabilities not existing at the time of its passage." *Doe v. Boy Scouts of Am.*, 148 Idaho 427, ---, 224 P.3d 494, 498 (2009) (quoting *Ford v. City of Caldwell*, 79 Idaho 499, 509, 321 P.2d 589, 594 (1958)). The Legislature did not expressly provide for its amendment to § 41-2502 to apply to preexisting insurance policies. In addition, there is plenty of authority holding that contracts are interpreted according to the law at the time the contract is executed. *E.g. Smith v. Idaho Hosp. Serv., Inc.*, 89 Idaho 499, 503, 406 P.2d 696, 698 (1965); *Northland Ins. Co. v. Boise's Best Autos & Repairs*, 132 Idaho 228, 231, 970 P.2d 21, 24 (Ct. App. 1997), *rev'd on other grounds*, 131 Idaho 432, 958 P.2d 589 (1998) (applying the rule specifically to insurance contracts).

Nonetheless, regardless of when I.C. § 41-2502(1) was enacted, it is the Court's responsibility not to enforce a contract provision that is contrary to public policy. "Public policy is not static, but may change as the relevant factual situation and the thinking of the times change." *Brown v. Snohomish Cnty. Phys. Corp.*, 845 P.2d 334, 338 (Wash. 1993). The duty to avoid enforcing an invalid contract term is so strong that Idaho's courts must raise the public policy issue *sua sponte* if necessary. *Quiring*, 130 Idaho at 567, 944 P.2d at 702. The Court does not invalidate a contract only if it was void at the time it was entered. Instead, the Court must not enforce any contract "at any stage in the litigation" in which it becomes apparent that the provision contravenes public policy. *Id.* Thus, whenever the Court discovers that a provision is invalid, the Court must refuse to enforce it.

It is widely accepted that contracts can be eviscerated by a subsequent change in public policy. *E.g. Pittsburg Plate Glass Co. v. Jarrett*, 42 F. Supp. 723, 730 (M.D. Ga. 1942); *V. & S. Bottle Co. v. Mountain Gas Co.*, 104 A. 667, 667 (Pa. 1918) (per curiam); *Dorr v. Chesapeake & Ohio Ry. Co.*, 88 S.E. 666, 667 (W. Va. 1916); *see also Bd. of Educ. v. Emp. Ass'n of Willingboro Sch.*, 429 A.2d 429, 430 (N.J. Super. Ct. App. Div. 1981) (noting that contracts should be interpreted according to the law existing when they are formed but also that changes in the law may make a contract illegal). Courts have broadly articulated this rule. The U.S. Supreme Court has stated that "no contract can properly be carried into effect . . . which, being made consistently with the rules of law at the time, has become illegal in virtue of some

13

subsequent law." *Louisville & Nashville R.R. Co. v. Mottley*, 219 U.S. 467, 485, 31 S. Ct. 265, 271 (1911) (quotation omitted).

Although there is expansive language in many cases, a rule permitting any change in public policy to eviscerate preexisting contracts would not serve Idaho well. Such a rule does not account for private agreements between parties that are unlikely to endanger the public welfare. A more refined approach is to nullify only those agreements that violate state policies designed to protect the public good, either because the object of the agreement is inherently harmful or because a condition in the agreement would, in the aggregate, tend to harm the public. *See Chicago, Burlington, & Quincy R.R. Co. v. McGuire*, 219 U.S. 549, 570, 31 S. Ct. 259, 263 (1911) (holding that the state legislatures may nullify existing contracts "where the parties do not stand upon an equality, or where the public health demands that one party to the contract shall be protected against himself"); 17A C.J.S. *Contracts* § 29 (stating that "legislation in exercise of a state's police power, or by subsequent statute announcing new public policy" can avoid preexisting contracts). This approach prevents relatively unforeseeable changes in public policy from undermining otherwise legitimate business arrangements. *See Wasserman's Inc. v. Township of Middletown*, 645 A.2d 100, 105 (N.J. 1994) (upholding municipal-land leases that had not undergone public bidding as required by a new statute).

For example, New York limits the situations in which a shift in public policy can nullify contract terms. The rule there only applies to "acts of the Legislature which are strictly measures of public policy, not to those which are intended primarily to establish or affect the rights of parties to each other." *Goldfarb v. Goldfarb*, 450 N.Y.S.2d 212, ---, 86 A.D.2d 459, 461 (N.Y. App. Div. 1982). New York's courts have considered voiding contract terms only when upholding them would harm the public or would be enforced at public expense. *Compare CKC Chiropractic v. Republic W. Ins. Co.*, 784 N.Y.S.2d 350, 352 (N.Y. Civ. Ct. 2004) (discussing whether an insurer had to pay benefits to an unlicensed medical provider), *Bloomfield v. Bloomfield*, 764 N.E.2d 950, 953 (N.Y. 2001) (discussing whether a woman could agree to waive support from an ex-spouse), *and Glengariff Corp. v. Snook*, 471 N.Y.S.2d 973, 977–79 (N.Y. Sup. Ct. 1984) (refusing to enforce a contract to pay a medical provider more than what the provider could collect under a new Medicaid law), *with Rotodyne, Inc. v. Consol. Edison Co. of New York*, 389 N.Y.S.2d 387, 388 (N.Y. App. Div. 1976) (refusing to invalidate a

subcontractor's waiver of mechanics-lien rights against a general contractor).[9] Although we decline to adopt New York law on this subject, these cases are instructive.

As explained above, Idaho's UIM mandate was designed to protect the public from underinsured motorists, and not merely to govern private relations between parties. The Legislature has required that insurers offer UIM coverage to all motorists, not UIM coverage conditioned on totally depleting the tortfeasor's policy. Exhaustion clauses have no purpose but to dilute Idahoans' protection against underinsured drivers and to prevent insureds from collecting legitimate claims. They are a product of the insurance company's sophistication and bargaining power. *See Hettwer v. Farmers Ins. Co. of Idaho*, 118 Idaho 373, 377, 797 P.2d 81, 85 (1990) (quotation omitted) (explaining that insurance companies enjoy a significant bargaining advantage over insureds). They also impose additional litigation demands on the court system, which directly impedes public access to the courtroom. These threats to public safety and demands on the justice system occur regardless of when the parties executed the insurance contract. Because exhaustion clauses impinge on a state public policy designed to protect the public welfare, they are void in the State of Idaho.[10]

In summary, the exhaustion clause is void based on Idaho's declared public policy aimed at protecting its citizens from underinsured drivers and on the doctrine of judicial economy, which here includes shielding parties from excessive litigation and preventing unnecessary

---

[9] Notably, California does not allow public-policy changes to affect preexisting contracts. *Bovard v. Am. Horse Enter.*, 247 Cal. Rptr. 340, 344 n.3 (Cal. Ct. App. 1988). Nonetheless, like New York, the cases in which California courts refuse to invalidate contracts due to changed public policy apparently always involve private rights between two arms-length parties. *E.g. Stephens v. S. Pac. Co.*, 41 P. 783, 786 (Cal. 1895) (refusing to invalidate a warehouse lease agreement where leaseholder indemnified landowner for the landowner's own negligence); *Whitmire v. H.K. Ferguson Co.*, 68 Cal. Rptr. 78, 82 (Cal. Ct. App. 1968) (refusing to invalidate an agreement in which a construction subcontractor indemnified the general contractor for its negligence).

[10] The Dissent argues that exhaustion clauses do indeed have a legitimate purpose, stating that our opinion today simply indulges in "a belief in a grand conspiracy among evil insurance companies." This assertion is hyperbole, as exhaustion clauses are only a matter between one insurer and its insured—we need not find a "conspiracy" to hold that this kind of clause violates public policy. In any event, the Dissent offers no legitimate alternative reason why an insurer would insert such a clause into its policies. It is possible that exhaustion clauses are useful to ensure that the tortfeasor actually could not fully compensate the accident victim, but they are not necessary to accomplish this purpose if insurance carriers receive credit for the full limits of the tortfeasor's policy, as we hold today.

The Dissent also refuses to suggest a legitimate purpose for exhaustion clauses because the clauses' purpose "was not an issue litigated below," and the factual record on the matter is undeveloped. This position misunderstands how a public-policy analysis works. Whether a contract term is illegal is not a factual inquiry but a legal one. *Farrell v. Whiteman*, 146 Idaho 604, 608, 200 P.3d 1153, 1157 (2009). Since neither American Family nor the Dissent can come up with any legitimate reason to allow insurance companies to condition UIM coverage in this way, exhaustion clauses are illegal as a matter of law.

15

demands on the judicial system. Claimants need not exhaust the limits of the tortfeasor's policy, but instead must credit to the UIM insurer the gap between the settlement with the tortfeasor's insurer, if any, and the policy limits. Because Hill settled with the Hamiltons for just under their policy limits and is ready to credit the gap to American Family, the summary judgment in favor of American Family is vacated.

**B.      Hill Is Not Entitled to Attorney Fees on Appeal**

Hill has also not established that American Family actually owes her any amount under the policy and is still therefore not entitled to fees on appeal. The Idaho Code provides:

> *Any insurer* issuing any policy, certificate or contract of insurance, surety, guaranty or indemnity of any kind or nature whatsoever, *which shall fail for a period of thirty (30) days after proof of loss has been furnished* as provided in such policy, certificate or contract, *to pay to the person entitled thereto the amount justly due* under such policy, certificate or contract, shall in any action thereafter brought against the insurer in any court in this state for recovery under the terms of the policy, certificate or contract, pay such further amount as the court shall adjudge reasonable as attorney's fees in such action.

I.C. § 41-1839(1) (emphases added). If Hill prevails on appeal, she has only succeeded in having the summary judgment against her vacated. Although the exhaustion clause would not bar her recovery, under I.C. § 41-1839(1) she still must establish the "amount justly due under [her] policy," if any. She therefore shall not receive attorney fees on appeal.

## VI. CONCLUSION

Because the exhaustion clause in Hill's UIM policy with American Family violates public policy, it cannot bar her recovery. The district court's grant of summary judgment in favor of American Family is therefore vacated and this case is remanded to the district court for further proceedings consistent with this Opinion. Hill is not entitled to attorney fees on appeal because she has not yet established that an amount, if any, is justly due under the policy. Costs to Appellant.

Justices BURDICK and J. JONES **CONCUR.**


Chief Justice EISMANN, dissenting.

Because the majority usurps the authority of the legislature and the director of the Department of Insurance to strike a provision from an insurance contract that the majority simply happens to dislike, I respectfully dissent.

16

This case revolves around a policy provision which provides, with respect to underinsured motorist (UIM) coverage, "**We will** pay under this coverage only after the limits of liability under any bodily injury liability bonds or policies have been exhausted by payment of judgements or settlements."  (Bold type in original.)  This provision, an exhaustion clause, is concededly unambiguous.  The majority strikes it from the insurance policy on the ground that it allegedly violates public policy and the newly created doctrine of judicial economy.  As will be shown, there is no recognized public policy in Idaho that it violates and the doctrine of judicial economy is nonsensical.  In actuality, it is the majority opinion that violates public policy as expressly declared by statute.

Before addressing Idaho's public policy, I will address the majority's assertion that "[n]early every jurisdiction with a statutory UIM mandate similar to Idaho's has found exhaustion clauses to be contrary to public policy."  We would not condone our children's misconduct based upon the excuse that other kids were doing it too, and such an argument does not validate the majority opinion.  Whatever may be the authority of courts in other jurisdictions to modify insurance contracts, in Idaho "[c]ourts do not possess the roving power to rewrite contracts in order to make them more equitable."  *Lovey v. Regence BlueShield of Idaho*, 139 Idaho 37, 41, 72 P.3d 877, 881 (2003); *accord Losee v. Idaho Co.*, 148 Idaho 219, 223, 220 P.3d 575, 579 (2009).  The exhaustion clause must violate the public policy of Idaho, not that of some other state.

"Public policy may be found and set forth in the statutes, judicial decisions or the constitution."  *Bakker v. Thunder Spring-Wareham, LLC*, 141 Idaho 185, 189, 108 P.3d 332, 336 (2005).  Thus, the question is what statute, judicial decision, or constitutional provision declares a public policy that is violated by the exhaustion clause.  Each of the three sources of public policy will be addressed separately.

**1. Constitutional provision.** Public policy may be found in the Constitution. *Id.*  The majority does not contend that the exhaustion clause violates any constitutional provision.

**2. Statute.**  The majority cites Idaho Code § 41-2502 as amended in 2008, but it is clear that the exhaustion clause does not expressly or implicitly violate any public policy declared by that statute.  First, that statute does not even apply to the insurance policy in this case.  It only applies to "the issuance of any new policy or the first renewal or replacement of any existing policy of motor vehicle liability insurance *with an effective date on or after January 1, 2009.*"

17

Idaho Code § 41-2502(3) (2010) (emphasis added).[11] The insurance policy in this case had an effective date of July 19, 2005, almost three and one-half years prior to January 1, 2009.[12] The majority's assertion that the exhaustion clause in this policy violates some public policy declared by the 2008 amendment to the statute is directly contrary to the legislature's expressly declared public policy regarding the insurance policies to which the amendment applies.

Second, the statute requires insurance companies to offer UIM coverage, but Idaho Code § 41-2502(2) grants the named insured "the right to reject either or both uninsured motorist coverage or underinsured motorist coverage." Because the insured has the right to reject UIM coverage entirely, it is difficult to see how there is a public policy prohibiting an insured from entering into an insurance contract that requires exhaustion of the limits of the tortfeasor's liability policy before the insured can collect UIM benefits.

Third, even if the 2008 amendment had applied to the policy in this case, the statute does not expressly or implicitly address exhaustion clauses or any of the procedures applicable to making a claim under UIM coverage. The majority concedes, "The Idaho Code neither requires nor expressly permits exhaustion clauses," and the majority does not identify any statutory provision even allegedly implicitly violated by the exhaustion clause. The 2008 amendment merely requires insurance companies to offer underinsured motorist (UIM) coverage in their motor vehicle liability policies. It does not in any way purport to address the procedures for making a claim under such coverage. The majority cannot explain how a requirement that an insured establish that the tortfeasor was in fact underinsured as a precondition to recovering UIM benefits violates the public policy requiring insurance companies to merely offer UIM coverage in their motor vehicle liability policies. It states, "The Legislature clearly enacted the UIM amendments to protect the citizens of this State from being undercompensated for their injuries . . . ." It also refers to "Idaho's UIM mandate [that] was designed to protect the public from

---

[11] This subsection provides:

> Prior to the issuance of any new policy or the first renewal or replacement of any existing policy of motor vehicle liability insurance with an effective date on or after January 1, 2009, a named insured shall be provided a standard statement approved by the director of the department of insurance, explaining in summary form, both uninsured and underinsured motorist coverage, and the different forms of underinsured motorist coverage that might be available from insurers in Idaho.

[12] The policy stated that it was "**EFFECTIVE FROM** 07-19-2005 **TO** 12-22-2005." (Bold type in original.)

underinsured motorists . . . ." The majority seems to think that UIM coverage is mandatory, rather than coverage that the insured has the option to purchase. The majority's hyperbole indicates it believes that a statute simply requiring insurance companies to offer UIM coverage will somehow magically reduce accidents caused by underinsured motorists.

In fact, it is the majority opinion, not the exhaustion clause, that violates public policy as expressly declared by statute. Idaho Code § 41-2502(1) requires that insurers offer uninsured and underinsured coverage in their motor vehicle liability insurance policies "*under provisions approved by the director of the department of insurance*, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured and underinsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom." (Emphasis added.) The public policy declared by statute is that the director of the Department of Insurance, not this Court, has the authority to determine whether provisions of an insurance policy that do not conflict with any express statutory requirement are consistent with public policy. There was a time when this Court correctly refused to usurp the authority granted by the legislature to the director.

In *Hammon v. Farmers Insurance Co. of Idaho*, 109 Idaho 286, 707 P.2d 397 (1985), the insureds were injured when they swerved to avoid an oncoming vehicle that had crossed into their lane of travel and crashed. The uninsured motorist coverage of their insurance policy included injury by "hit-and-run" vehicles, but it required that such vehicles have "physical contact" with the insured or the vehicle the insured was occupying. By swerving, the insureds had avoided colliding with the oncoming vehicle, so there was no physical contact with that vehicle. They sued, contending that the physical-contact requirement in their insurance policy was void as against public policy. In deciding that it was not, we stated, "Because the Idaho statute neither mandates nor prohibits uninsured motorist coverage in hit-and-run situations, the physical contact requirement becomes a matter of contract between the insured and the insurer which we will not disturb." *Id.* at 289, 707 P.2d at 400.

We noted, referring to Idaho Code § 41-2502, that "the uninsured motorist statute itself specifically mentions that automobile insurance policies must be approved by the director."[13]

---

[13] Prior to the 2008 amendment of Idaho Code § 41-2502, it provided that motor vehicle liability policies must include uninsured motorist coverage, unless the insured rejected that coverage. The statute also stated that the coverage was to be "under provisions approved by the director of the department of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor

19

We then stated, "The director's construction of insurance policies is entitled to great weight and will be followed by this Court absent cogent reasons for holding otherwise." *Id*.

Justice Bistline dissented in *Hammon*, making arguments similar to those in the majority opinion in the instant case. He wrote, "a *growing* number of courts, like the Court of Appeals, have found that physical contact requirements violated the intent of these statutes [like Idaho Code § 41-2502]." *Id*. at 290, 707 P.2d at 401 (emphasis in original). He contended that this Court should not "dwell[] on the face value of the words of the statute," but should "probe deeper for a statute's meaning." *Id*. at 291, 707 P.2d at 402. He argued, "In reviewing the uninsured motorist coverage statute, to end all analysis at the surface is to frustrate the statute's purpose." *Id*. Quoting from the Supreme Court of Hawaii, he called the physical-contact requirement an "arbitrary barricade erected to eliminate all claims for damages resulting from one car accidents" and stated that such requirement "unjustifiably impedes effectuation of the statutory policy of protection for insureds against damage from the negligence of unidentified drivers." *Id*. He concluded by criticizing the director of the Department of Insurance, stating, "As a final thought, the Director of the Department of Insurance may be elated to discover that his apparent approval of the defendant carrier's policy may be the very factor which today has thrown the scales of justice out of balance." *Id.* at 292, 707 P.2d at 403. Fortunately, the majority in *Hammon* was not swayed by Justice Bistline's hyperbole.

In *Hanson v. State Farm Mutual Automobile Insurance Co.*, 112 Idaho 663, 735 P.2d 974 (1987), the insureds brought an action to recover under the uninsured motorist (UM) coverage of three different motor vehicle policies issued by State Farm for three separate vehicles. Because the insureds claimed that their damages exceeded the policy limit of the UM coverage in the policy covering the vehicle they were occupying when it was struck by an uninsured driver, they contended that they were entitled to stack the uninsured motorist coverages of all three policies. The policies each had an anti-stacking clause, but the trial court held that such clause violated public policy. On appeal, we reversed the trial court.

In doing so, we recognized the authority granted by the legislature to the director of the Department of Insurance to determine whether insurance policy provisions comport with public

---

vehicles because of bodily injury, sickness or disease, including death, resulting therefore." Ch. 61, § 1, 1967 Idaho Sess. Laws 124, 125. Except for adding "and underinsured" before the words "motor vehicle," that provision remained unchanged when the statute was amended in 1988 to include underinsured coverage. Ch. 69, § 1, 2008 Idaho Sess. Laws 183, 183.

policy. We stated, "The Director of the Department of Insurance is the person entrusted by the legislature to determine whether or not given policies comport with the public interest. Policies approved by the Director are thus presumed to be in harmony with public policy." *Id.* at 667-68, 735 P.2d at 978-79. We then stated, "In the absence of proof that a policy contains provisions which conflict with *express legislative directives*, the Director's approval of an insurance policy form is an administrative determination that the policy form is in the 'public interest.' " *Id.* (emphasis added).

There is no contention that the exhaustion clause conflicts with any express legislative directives. Indeed, it is the majority opinion that conflicts with the express legislative directive that it is the director of the Department of Insurance who is granted the authority to approve of provisions in underinsured motorist coverage and to determine if they are in accordance with public policy. As we recently stated, "Policies that are approved by the Director of the Department of Insurance are presumed to be in accordance with public policy. Absent an assertion to the contrary, this Court assumes the policy was submitted to and approved by the Director." *American Foreign Ins. Co. v. Reichert*, 140 Idaho 394, 399, 94 P.3d 699, 704 (2004) (citations omitted).

**3. Judicial decision.** Prior to 2008, there were no statutes in Idaho dealing with UIM coverage. In *Meckert v. Transamerica Insurance Co.*, 108 Idaho 597, 701 P.2d 217 (1985), this Court held that there was no public policy in Idaho regarding UIM coverage. We stated as follows:

> [T]he Idaho statutes do not regulate *underinsured* motorist coverage. There are no requirements that insurance carriers offer such *underinsured* motorist coverage, nor that motorists have such *underinsured* coverage. Neither the Idaho legislature nor the courts have declared that there exists a public policy applicable to *underinsured* motorist coverage. While such a policy might be desirable, that public policy should be enunciated by our legislature and not by this Court.

*Id.* at 600, 701 P.2d at 220 (italics in original; citations omitted). We reiterated that holding in *Erland v. Nationwide Insurance Co.*, 136 Idaho 131, 133, 30 P.3d 286, 288 (2001), wherein we stated, "There exists no public policy in regard to underinsured motorist coverage."

The majority contends that public policy has somehow changed and that "the exhaustion clause is void based on Idaho's declared public policy favoring UIM coverage and on the doctrine of judicial economy." Neither of these rationales makes sense.

21

The majority does not explain where this alleged doctrine of "favoring UIM coverage" arises, since the legislature only required that insurance companies offer such coverage and expressly provided that insureds can reject it. Does that mean UIM coverage is more favored than other types of insurance coverage? Can a court modify to its liking contractual provisions regarding UIM coverage, but not fire coverage or theft coverage?

This Court has never recognized a "doctrine of judicial economy," whatever that is. The majority's list of examples allegedly supporting this doctrine are totally unsupported by anything in the record, nor is there anything indicating how often, if at all, they have occurred in Idaho. We have encouraged court procedures that promote judicial economy and have recognized that the doctrine of res judicata is based, in part, upon judicial economy, but we have never stricken or modified a contractual provision on the ground that doing so would promote judicial economy. If that supposed doctrine trumps contractual provisions, a court presiding over a breach of contract case should simply declare void the contractual provision(s) allegedly violated in order to avoid the necessity of further court proceedings and thereby promote judicial economy. In actuality, in this case following the law and sustaining the exhaustion clause would promote judicial economy. The case would be ended.

In an attempt to justify its opinion, the majority states, "There might be reasons for a claimant to settle below policy limits that are unrelated to the amount of damages the claimant has suffered." That was certainly true in this case. Plaintiff settled for $1,000 less than the tortfeasor's policy limits because prior to settling neither the Plaintiff nor her attorney had ever read her insurance policy, and neither of them knew she had UIM coverage. During oral argument, the followed exchanged occurred:

> Justice Warren Jones: Do you say that she didn't think she had underinsured coverage at the time she settled?
>
> Mr. Johnson: That's correct, your Honor. She thought that she just had a bare bones policy and didn't have underinsured motorist coverage.
>
> Justice Warren Jones: Okay.
>
> Mr. Johnson: She wasn't aware of the exclusion that I just mentioned on page nineteen of her policy that states that American Family will pay under coverage only after the limits of liability under any policy, liability bonds or policies have been exhausted by payment or judgments or settlement.

The policy states in bold letters at the top of the first page, "PLEASE READ YOUR POLICY." Had either the Plaintiff or her attorney read Plaintiff's insurance policy, they would have known of the exhaustion clause and undoubtedly would not have settled with the tortfeasor for $1,000 less than the limits of his liability coverage. Had they refused to settle for less than the policy limits of $25,000, the tortfeasor's insurer would undoubtedly have paid the policy limits rather than incurring thousands of dollars in legal fees in an attempt to save $1,000. We have previously stated, "It is certainly not the law in Idaho that an insured has no obligation to read his policy . . . ." *Foster v. Johnstone*, 107 Idaho 61, 67, 685 P.2d 802, 808 (1984). Apparently, the public policy underlying the newly created "doctrine of judicial economy" is that insureds, and their attorneys, should not be burdened with reading insurance policies and that there should be no consequences from failing to do so. Judicial economy is apparently also promoted by modifying insurance contracts to avoid malpractice claims against attorneys who advise their clients to settle claims against tortfeasors with insufficient liability insurance coverage before determining whether their clients have UIM coverage and, if so, the policy provisions applicable to such coverage.

In addition, the majority opinion does not merely apply to claimants who choose to settle for less than the tortfeasor's policy limits. It would also apply to cases in which the insured's claim against the tortfeasor went to trial, and the jury verdict was for less than the tortfeasor's policy limits. Under the majority opinion, the insured would be able to still make a claim under the UIM coverage, hoping to be more successful the second time.

The majority states, "Exhaustion clauses have no purpose but to dilute Idahoans' protection against underinsured drivers and to prevent insureds from collecting legitimate claims." Of course, there is absolutely nothing in the record supporting this hyperbole, and it is more indicative of a belief in a grand conspiracy among evil insurance companies than any understanding as to the purpose of an exhaustion clause. The majority faults me for not offering a "legitimate alternative reason why an insurer would insert such a clause into its policies." I have not done so because that was not an issue litigated below, and there is no evidence in the record regarding it. Although I could hypothesize a reason, I prefer to make decisions based upon facts in the record rather than upon wild accusations. There is likewise nothing in the record to support the majority's claims regarding the difficulties that may be caused by the exhaustion clause, nor is there any evidence as to how often, if ever, such difficulties have

occurred in Idaho. By asserting that the court can void contractual provisions that may possibly, in some unknown percentage of cases, increase judicial workloads, the majority is confused about its proper role. It apparently believes it is also the legislative body in this state.

There was a time when this Court recognized its proper role and the limits of its knowledge and authority. In *Blackburn v. State Farm Mutual Automobile Insurance Co.*, 108 Idaho 85, 697 P.2d 425 (1985), the plaintiff had obtained a judgment for $150,000 against the driver of a car that collided with a vehicle occupied by his wife and three of his children. She and one child were killed and the other two children were injured. The tortfeasor's liability insurer paid the policy limits of $20,000, of which the plaintiff received $10,000. He then brought an action against his own insurance company seeking to recover under his uninsured motorist coverage. He contended that the tortfeasor was an uninsured motorist to the extent that his liability insurance was insufficient to compensate the plaintiff for his damages. The plaintiff asked this Court to so hold by following the reasoning of the Arizona and Hawaii Supreme Courts.

We noted "the anomaly [sic] presented by the circumstances, particularly that a holder of a policy containing uninsured motorist coverage may well be in a better position if a tortfeasor carries no insurance whatsoever rather than carrying the minimum coverage mandated by the statute." *Id.* at 90, 697 P.2d at 430. However, we correctly refused to follow the example of the Arizona and Hawaii courts because "such clearly would be to indulge in judicial legislation under the guise of statutory interpretation." *Id*. We understood that such judicial rewriting of insurance policies could likely result in an increase of insurance costs to the motoring public. *Id*. We recognized that the plaintiff was, in actuality, asking us to make a policy decision, which "should rest on factors militating for or against that decision." *Id*. We held, however, that such policy decision should be made by the legislature based upon adequate information. We stated, "However, all of such questions should be dealt with on the basis of adequate information (little of which is before this Court) by a legislative body equipped and authorized to make such policy decisions." *Id*.

In the instant case, the majority has indulged in judicial legislation under the guise of some ill-defined public policy and a newly created doctrine of judicial economy. The policy decision of whether to prohibit exhaustion clauses should be made by the legislature, or by the director of the Department of Insurance, based upon adequate information, which the majority

24

lacks.  In *Blackburn*, this Court "urge[d] legislative attention to the inequitable results which flow from the language of our statutes."  *Id*.  However, in *Blackburn*, *Hammon*, and *Hanson*, this Court understood its proper role and had the rectitude to refrain from usurping the authority of the legislature and the director of the Department of Insurance.  We should follow that example.

Justice HORTON concurs.